HAMAR THEATRES, INC.,
Plaintiff,

v.

John CRYAN, Individually and as Sheriff
of Essex County, State of New Jersey, et al., Defendants.

Civ. A. No. 75–167.

United States District Court,
D. New Jersey.

March 25, 1975.

Podvey & Sachs, Newark, N. J. by Bruce J. Hector, East Orange, N. J., for plaintiff.

Joseph P. Lordi, Essex County Prosecutor by Harry Robinson, III, and Roy B. Greenman, Asst. Prosecutors, for defendants.

## OPINION

STERN, District Judge.

Plaintiff Hamar Theatres, Inc. brings suit under 42 U.S.C. § 1983 for a preliminary and a permanent injunction prohibiting the defendants Essex County Sheriff Cryan and Essex County Prosecutor Lordi from instituting any legal action, criminal or civil, against plaintiff in connection with seven motion pictures seized, pursuant to search warrants, by agents of the defendants at plaintiff's Newark place of business, known as the Treat Theatre, and for the return of those films, all on the ground that the judge who issued the warrants did not himself view the films before authorizing the seizure, but instead relied upon affidavits by policemen as to what each film contained. Plaintiff also seeks a restraint prohibiting the defendants from seizing any other films without first obtaining a search warrant from a magistrate who *himself views* the subject films *before* issuing a warrant for their seizure. Plaintiff also sues for declaratory relief.

An Order to Show Cause was signed by this Court on January 31, 1975, and upon the representation of defendants that, pending this Court's determination, no action would be taken against plaintiff with regard to the seven films seized, plaintiff's request for a temporary restraining order was not granted. At oral argument on February 14, 1975, this Court ordered the application for preliminary and permanent injunctive relief denied, and the action dismissed, for the reasons set forth herein.

## I. FACTUAL AND PROCEDURAL BACKGROUND

There is no factual dispute concerning the procedures which were employed in this case. On November 22, 1974, agents of the Essex County Sheriff's Office entered the Treat Theatre in

Newark, which is owned and operated by plaintiff Hamar Theatres, Inc. (hereinafter Hamar), pursuant to search warrants signed by the Honorable Richard B. McGlynn, Judge of the Superior Court of New Jersey (temporarily assigned). The warrants were based on the affidavits of detectives who claimed to have viewed the films and who described what they had viewed in their affidavits, which they presented to the judge in support of their application for warrants. The warrants thereafter issued, authorizing the seizure of prints of the films "Surprised Coed" and "Ski Bunnies," and the two prints were seized. Approximately three hours later, plaintiff Hamar appeared before the state court judge and formally moved for the return of the seized films on the grounds that "a judicial officer issuing a Warrant for the seizure of allegedly obscene material had an obligation under Heller v. New York, 413 U.S. 483 [93 S.Ct. 2789, 37 L.Ed.2d 745] (1973), to first view that material in order to determine the probable cause for seizure," and "that the seizure of the only available print of those films just before a weekend effectively constituted a prior restraint of their exhibition in violation of the First Amendment of the United States Constitution." (PB: 1–2) The motion was denied on both grounds, but Judge McGlynn did order that plaintiff be permitted to copy the seized films at its own expense. Plaintiff declined to do so.

The two films at issue were viewed by Judge McGlynn on November 27, 1974. At that time, plaintiff requested an evidentiary hearing on the question of obscenity, while expressly reserving its previously asserted constitutional objections to the seizure on the ground that no judicial officer had viewed the material himself before authorizing the seizure. The hearing was set for December 4, 1974. At the appointed time, plaintiff elected to waive its right to an adversary hearing rather than to submit the issue of obscenity to Judge McGlynn.

On January 8, 1975, agents of defendants Cryan and Lordi entered the Treat Theatre pursuant to additional search warrants, authorized by Judge McGlynn and obtained by means of the same procedure, that is, a viewing by the officers and an account by affidavit thereafter. Pursuant to these warrants, the policemen seized prints of the films "Cheese," "Lovers in the Woods," and "Six for Sex." Once again, plaintiff thereafter instituted suit before Judge McGlynn for return of the seized films, on January 9, 1975, on the same grounds as those asserted with regard to the previous seizure. The motion was again denied. The same order permitting copying at plaintiff's expense was made, and once again plaintiff made no attempt to copy the films. In response to a question from the court, plaintiff indicated that it desired an adversary hearing on the issue of obscenity, while reserving its constitutional objections to the method of seizure. Representatives of all parties, and Judge McGlynn, viewed the three seized films on January 14, 1975. An adversary hearing on the issue of obscenity was held on January 16, 1975. The State called no witnesses at the hearing, but plaintiff called Dr. Seymour Sinick, Professor of Sociology at the City University of New York, who testified that under the three-pronged test of Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), the three films seized on January 8, 1975 should not be classified as obscene. On January 17, 1975, Judge McGlynn ruled that the films were obscene, that there existed probable cause for restraint of the exhibition of the films pending further action by the Essex County Prosecutor, and that plaintiff could no longer copy any of the films.

On January 29, 1975, agents of defendants Cryan and Lordi entered the Treat Theatre pursuant to search warrants signed by Judge McGlynn, and seized prints of the films "Adultery" and "Tycoon's Daughter." The same

procedure had been followed in securing these warrants as in the prior seizures. On January 30, 1975, plaintiff began an action in the state court before Judge McGlynn for the return of these films on the same grounds raised in its two previous suits for the return of property. The relief sought was denied, but the court again ordered that the seized films be made available to plaintiff for copying at plaintiff's expense. Plaintiff requested an adversary hearing on the issue of obscenity, and the parties agreed to view the films on February 3, 1975. The instant action was filed on January 31, 1975, one day after that agreement and four days before the scheduled state court hearing.

To recapitulate, the facts are that on three occasions, pursuant to warrants issued by Judge McGlynn, agents of the sheriff and prosecutor went to plaintiff's theater and seized certain films on the grounds that they were obscene, and their exhibition a violation of New Jersey law. N.J.S.A. 2A:115-2. Each of the warrants issued by Judge McGlynn was based on affidavits sworn by police officers, reflecting that the affiants had viewed the film and detailing that which they had viewed on the screen. Thereafter, Judge McGlynn read the affidavits and determined that there was probable cause to believe that the films named and described in the affidavits were obscene, and therefore exhibited in violation of statute, and the warrants issued. After each seizure, plaintiff Hamar appeared before Judge McGlynn and sued for the return of the films on the ground that the seizure was an unconstitutional abridgment of plaintiff's First and Fourth Amendment rights, through the Fourteenth Amendment, because in issuing the warrant in reliance only on the affidavits of police officers, and without having viewed the films

first himself, Judge McGlynn had permitted a prior restraint to be effected by the police acting alone. As noted, plaintiff had asserted before Judge McGlynn, on each occasion, that the only proper procedure under the First and Fourth Amendments is for the judicial officer to view the films himself before authorizing law enforcement authorities to seize them. These arguments were made by plaintiff on its own motion on three separate occasions, after each seizure, and on each occasion the state court judge ruled against it.[1] Plaintiff took no appeal.

After the last of the three state judicial determinations, plaintiff Hamar filed suit in this Court for injunctive and declaratory relief, on precisely the claim raised thrice and lost thrice before the state trial judge. Thus plaintiff here alleges that the procedures employed by the State of New Jersey in the seizures of plaintiff's films were violative of the First and Fourth Amendments of the United States Constitution, made applicable to the states by the Fourteenth Amendment and actionable by 42 U.S.C. § 1983, in that the acts of the state constituted a prior restraint of protected speech by police, because Judge McGlynn had himself made no determination regarding obscenity before empowering the police to seize the films. Plaintiff seeks injunctive and declaratory relief from the federal tribunal to secure the return of its property and to bar the institution of criminal proceedings based on the seized films, in the state courts.

It is clear that this Court has jurisdiction over such a lawsuit. 42 U.S.C. § 1983; 28 U.S.C. § 1343(3). The state has conceded as much. Of greater import is the question whether this Court should exercise that jurisdiction, or whether it should instead defer to the

---

1. At the conclusion of each of plaintiff's motions, Judge McGlynn ruled that neither the First nor Fourth Amendments, as applicable to the states through the Fourteenth Amendment, required the judicial officer to view the film before issuing the warrant, that he had a right to rely on the affidavits submitted by the police officers, and that the procedures followed in the seizure of the films in question created no impermissible prior restraint.

state judicial process for reasons of comity and federalism, as enunciated by the Supreme Court in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1970), and its progeny.

## II. COMITY, EQUITY, FEDERALISM AND THE PRAYER FOR INJUNCTIVE RELIEF

■ A word of background is in order. It is well-settled that federal courts exist primarily as a forum to vindicate rights guaranteed to citizens of the United States by the federal Constitution and federal law, at least since general federal question jurisdiction was conferred on the federal courts in 1875. Act of March 3, 1875, § 1, 18 Stat. 470. Thus, in Zwickler v. Koota, 389 U.S. 241, 245, 88 S.Ct. 391, 394, 19 L.Ed.2d 444 (1967), the Supreme Court observed:

> During most of the Nation's first century, Congress relied on the state courts to vindicate essential rights arising under the Constitution and federal laws. . . . But that policy was completely altered after the Civil War when nationalism dominated political thought and brought with it congressional investiture of the federal judiciary with enormously increased powers. The Act of March 3, 1875, was the principal ". . . measure of the broadening federal domain in the area of individual rights," McNeese v. Board of Education, 373 U.S. 668, 673, [83 S.Ct. 1433, 10 L.Ed.2d 622]. By that statute ". . . Congress gave the federal courts the vast range of power which had lain dormant in the Constitution since 1789.
>
> These courts ceased to be restricted tribunals of fair dealing between citizens of different states and became the *primary* and powerful reliances for vindicating every right given by the Constitution, the laws, and treaties of the United States." (Emphasis added.) Frankfurter & Landis, The Business of the Supreme Court:

A Study in the Federal Judicial System 65 . . . .

In thus expanding federal judicial power, Congress imposed the duty upon all levels of the federal judiciary to give due respect to a suitor's choice of a federal forum for the hearing and decision of his federal constitutional claims. Plainly, escape from that duty is not permissible merely because state courts also have the solemn responsibility, equally with the federal courts, ". . . to guard, enforce, and protect every right granted or secured by the constitution of the United States. . . ." Robb v. Connolly, 111 U.S. 624, 637, 4 S.Ct. 544, 28 L.Ed. 542.

It is, however, equally well-established that although a federal court has jurisdiction to consider controversies such as the case at bar, there are situations in which the federal court ought to stay its hand. One classic instance of such abstention arises under what has been called the "Pullman Doctrine." Railroad Commission v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). This doctrine, however, is limited to very special circumstances. It comes into play only when, in order to resolve the federal constitutional claim pending before it, the federal court must make an interpretation of state law which is as yet unsettled. In such a case, the federal court must abstain from considering the federal constitutional claim if the state statute is susceptible to varying interpretations, at least one of which would conform to the requirements of the federal Constitution. The proper course would then be to send the parties to state court to litigate the state issues "in light of" the federal claims. England v. Louisiana Board of Medical Examiners, 375 U.S. 411, 420, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964); Government Employees v. Windsor, 353 U.S. 364, 77 S.Ct. 838, 1 L.Ed.2d 894 (1957). The parties would thus seek in state court that definitive interpretation of state

law, obtainable only in that forum, which is the necessary predicate to the determination of whether the state statute offends the federal Constitution. Cf. United States v. Livingston, 179 F. Supp. 9, 12–13 (D.C.1959), aff'd sub nom., Livingston v. United States, 364 U.S. 281, 80 S.Ct. 1611, 4 L.Ed.2d 1719 (1960), cited with approval in Zwickler v. Koota, *supra,* 389 U.S. at 250, 88 S. Ct. at 397:

> Regard for the interest and sovereignty of the state and reluctance needlessly to adjudicate constitutional issues may require a federal District Court to abstain from adjudication if the parties may avail themselves of an appropriate procedure to obtain state interpretation of state laws requiring construction.

 Thus, when a citizen sues in federal court to vindicate federal rights infringed by state agents, agencies, or even state statutes, he sues in an appropriate forum, and the federal court ought not to stay its hand, provided that no suit is pending in a state court, and the Pullman Doctrine does not apply. The situation materially changes, however, when at the time the citizen seeks redress in federal court he is also in the process of litigating the same claimed federal rights in a state tribunal. This situation arises most often where an individual is sued at the instance of the state, or prosecuted in state court, and he thereafter seeks relief in federal court on the ground that the state lawsuit itself violates, or is predicated on some violation of, a federally-guaranteed right. Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1970). When an individual waits to assert federal rights in federal court until after he is already embroiled in litigation within the state judicial system, the *Younger* sextet and its progeny establish the principle that, absent unusual circumstances, it is then too late for him to invoke his right to a federal forum to vindicate his federal rights, since the existing state forum is presumably fully capable of affording him that opportunity. In such circumstances, considerations of equity, comity and federalism require that the individual then present his claims to the state tribunal he is already before, rather than, in effect, removing the entire proceeding to federal court (most often to a three-judge district court convened pursuant to 28 U.S. C. § 2281).[2] Thus, although the federal court has jurisdiction over such a controversy, it will decline to exercise that

---

2. The Supreme Court issued a significant opinion in this area shortly before this opinion was filed. Huffman v. Pursue, Ltd., 419 U.S. 892, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). In that case, the Court held that *Younger* standards must be met before a federal district court may intervene where the pending state proceeding, though civil, "is both in aid of and closely related to criminal statutes which prohibit the dissemination of obscene materials." —— U.S. at ——, 95 S.Ct. at 1208. The Court noted that *Younger* rests both on "the traditional reluctance of courts of equity, even within a unitary system, to interfere with a criminal prosecution" and "the threat to our federal system" posed by federal judicial interference, which "prevents the state not only from effectuating its substantive policies, but also from continuing to perform the separate function of providing a forum competent to vindicate any constitutional objections interposed against those policies," as well as creating "duplicative legal proceedings" and "reflecting negatively upon the state court's ability to enforce constitutional principles." *Id.* Cf. Helfant v. Kugler, 500 F.2d 1188 (3rd Cir. 1974), vacated, —— U.S. ——, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975). This Court does not reach the question of whether *Huffman* covers the instant suit, although the state proceeding in that case, as here, was apparently *in rem* against the property rather than *in personam* against the owner. Even if *Huffman* does govern this case, however, this Court's analysis of the application of the *Younger* requirements to these facts, at n. 10, *infra,* has satisfied it that those criteria for federal intervention are not met here. Thus, even if the issuance of the search warrant were viewed as the commencement of that sort of state judicial proceeding, against Hamar or its property, to which *Younger* standards are made applicable by *Huffman,* this Court would merely be afforded a second basis upon which to reach the same result.

jurisdiction, absent a showing of unusual circumstances, and will require instead that the individual present his federal claims to the state court in the pending state proceeding.[3]

■ Just as a litigant may wait too long to assert his federal rights in a federal forum if he waits until he is actually under prosecution in state court, he may also fail in his choice of the federal forum if he attempts there to assert his federal rights too early. In order to invoke the jurisdiction of the federal courts, a suitor must do more than merely claim that there exists, for example, a state statute which chills the exercise of his federal constitutional rights. *Younger, supra,* at 52–53, 91 S.Ct. 746; Allee v. Medrano, 416 U.S. 802, 827, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974) (separate opinion of Burger, C. J.). "It must be alleged that the plaintiff 'has sustained or is immediately in danger of sustaining some direct injury' as a result of the challenged statute or official conduct. Massachusetts v. Mellon, 262 U.S. 447, 488, 43 S.Ct. 597, 67 L.Ed.

1078 (1923)." O'Shea v. Littleton, 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). Absent an actual threat of prosecution against such a plaintiff, the Supreme Court has indicated that there may be no case or controversy presented, within the meaning of Article III of the Constitution, and therefore no jurisdiction in the courts of the United States at all, solely on the basis of the mere existence of a state criminal statute which may offend the United States Constitution. *Younger, supra,* 401 U.S. at 52–53, 91 S.Ct. 746; *O'Shea, supra,* 414 U.S. at 493–499, 94 S.Ct. 669; Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968).

Steffel v. Thompson, 415 U.S. 452, 458–460, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974) appears to have relaxed somewhat the requirement that one must actually violate a criminal statute and subject himself to a demonstrably threatened prosecution before he may assert, in federal court, that a state or criminal statute is unconstitutional.[4] Nevertheless, the Constitution still requires that

---

3. The showing of special circumstances required by *Younger* for federal intervention in the face of a pending state proceeding must not be confused with a requirement of exhaustion of state remedies in civil rights suits, which has clearly been rejected by the Supreme Court on several occasions, Allee v. Medrano, 416 U.S. 802, 814, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974); McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 .(1961), although this rule may be beginning to erode. *Compare* Huffman v. Pursue, Ltd., —— U.S. ——, ——, 95 S.Ct. 1200, 43 L. Ed.2d 482 n. 21 (1975) *with* Mr. Justice Brennan's dissenting opinion in the same case, at ——————, 95 S.Ct. 1200, at 1212. Rather, it may be summarized as a demonstration of the traditional equitable requirements of irreparable injury and no adequate remedy at law in the state forum, as evidenced by bad faith prosecution, official harassment, or other extraordinary circumstances. 401 U.S. at 53, 91 S.Ct. 746; Perez v. Ledesma, 401 U.S. 82, 117, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971) (separate opinion of Brennan, J.). As the Chief Justice has recently synthesized them, the requirements of *Younger* are a showing of:

manifest bad faith and injury that is great, immediate, and irreparable, constituting harassment of the plaintiff in the exercise of his constitutional rights, and resulting in a deprivation of meaningful access to the state courts.

Allee v. Medrano, *supra,* 416 U.S. at 836, 94 S.Ct. at 2210 (separate opinion of Burger, C. J.).

As the Supreme Court wrote in Perez v. Ledesma, *supra,* 401 U.S. at 85, 91 S.Ct. at 677:

Only in cases of proven harassment or prosecution undertaken by state officials *in bad faith without hope of obtaining a valid conviction* and perhaps in other extraordinary circumstances where irreparable injury can be shown is federal injunctive relief against pending state prosecutions appropriate.

(Emphasis added). *Cf.* Allee v. Medrano, *supra,* 416 U.S. at 819, 94 S.Ct. at 2206.

4. In *Steffel,* the court held that there is a case or controversy where a federal plaintiff alleges threats of prosecution neither "imaginary or speculative," *Younger, supra,* 401 U.S. at 42, 91 S.Ct. 746, nor "chimerical," Poe v. Ullman, 367 U.S. 497, 508, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961), and that under

a plaintiff allege "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions[?]" Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). As the court recently held in *O'Shea, supra,* 414 U.S. at 494, 94 S.Ct. at 675:

> Abstract injury is not enough. It must be alleged that the plaintiff "has sustained or is immediately in danger of sustaining some direct injury" as a result of the challenged statute or official conduct. Massachusetts v. Mellon, 262 U.S. 447, 488, 43 S.Ct. 597, 67 L.Ed. 107 (1923). The injury or threat of injury must be both "real and immediate," not "conjectural" or "hypothetical." Golden v. Zwickler, 394 U.S. 103, 109–110, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969); Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.

Ed. 826 (1941); United Public Workers v. Mitchell, 330 U.S. 75, 89–91, 67 S.Ct. 556, 91 L.Ed. 754 (1947).

The dynamic relationship between the Scylla of *Younger* and the Charybdis of Article III was aptly summarized in a recent three-judge district court opinion:

> If the *Younger* rule did not exist, litigants could use federal court proceedings to paralyze state criminal proceedings. Pretrial motions could be litigated in federal court. State procedures could be tested in federal court without the highest state court having a chance to interpret the relevant statutes. Many issues in a case would have to be litigated repeatedly in different forums. On the other hand, if federal intervention were forbidden by the tiniest hint of any state action, the purpose of Congress in allowing litigants to obtain injunctive relief against infringements of their rights, as authorized by 42 U.S.C. § 1983, would be completely frustrated.

such circumstances, despite the fact that no state prosecution was actually pending against the federal plaintiff, he would not be required to "first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." 415 U.S. at 459, 94 S.Ct. at 1216.

Outside the narrow factual exception carved out in *Steffel,* however, where it appeared that the federal plaintiff had repeatedly engaged in the allegedly protected conduct of handbilling with another individual, who had been arrested for that conduct, and where the federal plaintiff had thus been put on *direct* notice by state officials that he would be arrested *himself* if he renewed his handbilling activity, a citizen who wishes to assert federal rights in a federal forum may still be put in a delicate and difficult position. If, on the one hand, he goes to federal court before committing an act prohibited by state law, to argue that the statute which proscribes the conduct and which is directly aimed at deterring that very conduct, is violative of his federally-guaranteed rights because the conduct *prohibited* by the state is *protected* by the United States, he is likely to be denied a federal forum because of lack of standing or lack of a case or controversy. *Cf.* Linda R. S. v. Richard D., 410 U.S. 614, 93 S.Ct.

1146, 35 L.Ed.2d 536 (1973); Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); *O'Shea, supra*; *Steffel, supra,* 415 U.S. at 458–460, 94 S.Ct. 1209. On the other hand, if he proceeds to engage in the conduct which he claims to be federally protected but which is nonetheless prohibited by state law, thus violating the statute, and is arrested immediately thereafter and brought into state court, then, absent extraordinary circumstances, he will be unable to assert his federal claims for injunctive or declaratory relief in federal court because the considerations of equity, comity and federalism embodied in *Younger* will require him to present those claims to the state forum in which his state prosecution is then pending. It should be noted that Judge McGlynn was originally a party defendant in this suit. The action against him was dismissed by consent of the parties. This Court therefore has no occasion to pass on the issue of whether an allegation that the state court itself combined with state officials to violate the civil rights of a federal plaintiff would be sufficient to constitute the extraordinary circumstance of inadequate remedy in the state court system. *Cf.* Helfant v. Kugler, 500 F.2d 1188 (3rd Cir. 1974), vacated, —— U.S. ——, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975).

The middle position is that federal interference is forbidden except under unusual circumstances once a state prosecution has actually started, but it is permitted until the actual inception of the proceedings. Were the rule against interference extended any further, litigants would be caught between *Younger* on the one hand, and the rules requiring standing and an actual "case or controversy" on the other. Such a Hobson's choice would frustrate both congressional intent and a workable system of federalism. Wall v. American Optometric Assoc., Inc., 379 F.Supp. 175, 187 (N.D.Ga. 1974), aff'd mem. 419 U.S. 888, 95 S.Ct. 166, 42 L.Ed.2d 134 (1974), rehearing denied, 419 U.S. 1061, 95 S.Ct. 648, 42 L. Ed.2d 659 (1974).

At first glance, the instant case might appear to present that rare factual situation justifying this Court's exercise of its jurisdiction, inasmuch as no state criminal charges are now pending against plaintiff, and the seizure and retention of plaintiff's property creates not only an admittedly real threat of prosecution for exhibition of obscenity, but also a real controversy over the return of the property itself. The state conceded at oral argument that there is now pending no state court criminal proceeding, initiated by the state, to which plaintiff Hamar is party and which therefore could be disturbed by this suit. While a warrant has been issued for the arrest of the manager of plaintiff's theater, it has not been executed, and in any event he is not a party to this action.

However, the state maintains that when plaintiff instituted the prior suits in state court for the return of the films, it voluntarily submitted to the state court the very federal claims it now makes here in this subsequent federal suit. On this basis, defendants assert, this Court should stay its hand, and require plaintiff to take its federal claims through the various steps of review in the state system initially selected by it, instead of attempting to attack the state trial court ruling collaterally, by asserting this claim for relief in this Court.[5] Plaintiff, for its part, concedes that as a part of its suits for return of the seized films, on three different occasions it did indeed assert the very arguments now presented here.[6] (PB: 1–7)

In *England, supra,* the Supreme Court held that after a district court has abstained on *Pullman* grounds, and the federal plaintiff brings suit in the state system in an attempt to resolve the open question of state law which caused the

5. Judge McGlynn's refusal to order the return of the seized films was reviewable in the Appellate Division pursuant to R. 2:2–3, probably as of right, and at least by leave. Neither alternative was pursued by Hamar.

6. Indeed, if defendants are correct and plaintiff must be required to adhere to its election of the state forum, it may subsequently be barred from instituting suit here, since the *England-Windsor* alternative of submitting federal claims to the state court only for the limited purpose of illuminating state law questions is obviously not available where the only questions before the state court are federal ones. *See* n. 7, *infra.* Plaintiff's only avenue to federal review of a final adverse decision by the state court system would lie in the appellate jurisdiction of the Supreme Court, 28 U.S.C. § 1257(2), and of course by petition for a Writ of Habeas Corpus, since elementary principles of *res judicata* would bar this Court from entertaining the same controversy between the same parties again on the merits, once it had been finally decided by a state tribunal. Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947). Whether this rule ought to be applied strictly in federal court to bar the § 1983 suit of a plaintiff who was a defendant in prior state court proceedings, "and who was thus compelled initially to present his federal claims in a state court," wherein he "seeks in a federal suit to vindicate a specially protected federal interest," is an open question and in any event not before this Court, in the absence of prior resort to the state appellate process by a federal plaintiff who was a state defendant. *See* Florida State Board of Dentistry v. Mack, 401 U.S. 960, 961, 91 S.Ct. 971, 28 L.Ed.2d 245 (1971), denying cert. to Mack v. Florida State Board of Dentistry, 430 F.2d 862 (5th Cir. 1970) (dissenting opinion of White, J.).

federal court to abstain, the plaintiff, upon losing his final state appeal, may bring suit again in federal court *only* if he has not "freely and without reservation submit[ted] his federal claims for decision by the state courts, litigate[d] them there, and . . . [had] them decided there." 375 U.S. at 419, 84 S. Ct. at 467.[7] Plaintiff here maintains that "the *England* reserve was formulated to avoid conflicts with state courts, and to deny a plaintiff two bites at the constitutional apple." Plaintiff's brief continues:

> Neither of those considerations apply [sic] here. As noted in Point 1 above, the mere issuance of a search warrant is not the commencement of a "state proceeding"; therefore, there is no possibility of conflict with the state courts.

PB:20

Plaintiff's argument that the mere issuance of the search warrant was not the commencement of a state suit may well be correct as far as it goes.[8] It does not, however, go far enough to cover the instant case. Here the problem plaintiff faces is a problem it has caused itself, for by initially moving in state court for return of the films on the same federal constitutional grounds it here asserts, it is seeking the very "two bites at the constitutional apple" which it claims to eschew. Although the issuance of a search warrant may or may not be the commencement of that kind of state proceeding to which the *Younger* doctrine would require deference, it is certain that plaintiff's suit for the return of the property is the commencement of just such a proceeding. Had plaintiff, after the first seizure, or after the second, or even after the third seizure, come to federal court with its complaint against state agents on the grounds which it asserts here now, it seems to this Court clear that there would have been no grounds, under *Pullman* or *Younger* or any other doctrine, for the federal court to deny the plaintiff a federal forum.[9] This is not, however, what the plaintiff elected to do.

---

7. In *England,* the court clarified its decision in Government Employees v. Windsor, 353 U.S. 364, 77 S.Ct. 838, 1 L.Ed.2d 894. (1957), limiting that case to a rule that, upon bringing suit in the state courts after federal abstention, a party need not "litigate his federal claims in the state courts, but only . . . inform those courts what his federal claims are, so that the state statute may be construed 'in light of' those claims." 375 U.S. at 420, 84 S.Ct. at 467.

8. Assuming, *arguendo,* that the issuance of the search warrant was the commencement of a state judicial proceeding, plaintiff Hamar was not a party thereto. The search warrants were captioned: "In the Matter of an investigation relating to the exhibition of motion pictures entitled . . . at The Treat Theatre in Newark, New Jersey." The state proceeding, if there was one, was instituted *in rem* against the films themselves, and was not a criminal or civil action against the possessor of the premises, plaintiff Hamar.
In any event, this Court is of the view that the seizure should be viewed as evidentiary in nature, and not as the commencement of a prosecution in the *Younger* sense. Hamar had no opportunity to litigate its federal claims when the search warrant was issued, since that was an *ex parte* proceeding, and

"there is no assurance that an individual from whom such property is seized will have the opportunity to challenge the constitutionality of the state proceeding or the statute under which such seizure was authorized because no criminal proceeding may ensue." Hamar Theatres, Inc. v. Cryan, 365 F.Supp. 1312, 1320, n. 9 (D.N.J.1973), vacated and remanded on other grounds, 419 U.S. 1085, 95 S.Ct. 670, 42 L.Ed.2d 675 (1974).

9. In 414 Theater Corp. v. Murphy, 499 F.2d 1155 (2nd Cir. 1974), the Court of Appeals affirmed a preliminary injunction against an overbroad ordinance which was alleged to chill First Amendment rights and to cause irreparable harm, rejecting a claimed *Younger* bar because, as the same court noted in Salem Inn, Inc. v. Frank, 501 F.2d 18, 21–22 (2nd Cir. 1974), prob. juris, noted sub nom. Doran v. Salem Inn, Inc., 419 U.S. 1119, 95 S.Ct. 801, 42 L.Ed.2d 819 (1975), "the underlying rationale behind *Younger* did not apply when state prosecutions were not pending when the federal actions were brought. [499 F.2d] at 1160–1163. *See* Steffel v. Thompson, 415 U.S. 452, 460, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); Lake Carriers Association v. MacMullan, 406 U.S. 498, 509, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972)." In *Salem Inn,* the court went on to hold that where no state prosecution was pending when the federal

We have here the obverse of the *Younger* coin. This is not a case of a defendant brought against its will into the state court system, who thereafter seeks, in effect, to remove the lawsuit to federal court. This is a plaintiff who has elected to seek redress in the state trial court first, and then, unhappy with

suit was brought, but where such a state prosecution was begun the day after the federal complaint was filed, *Younger* was still no bar. The court noted the Supreme Court's disclaimer in *Younger*:

> We express no view about the circumstances under which federal courts may act when there is no prosecution pending in state courts *at the time the federal proceeding is begun.*

(501 F.2d at 22, citing with emphasis added, 401 U.S. at 41, 91 S.Ct. 746.)

In addition, the Second Circuit relied on the following rationale:

> Third, we cannot ignore that lower federal courts are the '*primary* and powerful reliances for vindicating every right given by the Constitution, the laws, and treaties of the United States.' Steffel v. Thompson, emphasis original, quoting Frankfurter & Landis, The Business of the Supreme Court 65 (1928). As such, either in the absence of other considerations or in their equipoise, this consideration would tip the scales in favor of federal rather than state adjudication . . . .
>
> Finally, we are struck by the practical wisdom of having a clear-cut method of determining when federal courts shall defer to state prosecutions, threatened or pending, and when not. Without such a guide uncertainty and inequitable treatment are bound to result with the possibility of an Alphonse-Gaston routine developing between state and federal courts. The fact of which court is first presented with the question seems a clear-cut, reliable, and equitable guide to which court should adjudicate the merits. Generally, this should result in the most speedy disposition of the merits, which is in both the state's, here the municipality's, and the private party's interest. While in some cases such a rule may result in the proverbial rush to the courthouse door, it will guard against attempts by state officials to dispossess federal courts of jurisdiction by initiating suits after the federal action has begun, and similarly guard against attempts to avoid state judgment by inveighing for federal protection after initiation of state criminal prosecution. The certainty of where the power of adjudication properly lies, moreover, is likely to save all courts substantial time.

501 F.2d at 22–23.

Judge Lumbard, in dissent, noted:

> As Mr. Justice Black emphasized in his opinion for the Supreme Court in Younger v. Harris [citation omitted], even when there is only a threat of state prosecution, a federal court should not intervene absent a showing of 'special circumstances,' such as bad faith or harassment on the part of state or local officials.
>
> . . .
>
> It is, of course, true that the federal complaint requesting injunctive relief was filed one day prior to the commencement of the state criminal proceeding, which was only threatened at that time. On this basis, the majority argues that the need to demonstrate 'special circumstances' justifying federal equitable intervention is unnecessary. The distinction urged between threatened and pending state prosecutions, while a useful rule of thumb, should hardly be applied as an absolute rule of law. A hard and fast rule based on this distinction would represent a significant departure from traditional federal equity practice [citations omitted]. Additionally, it would encourage unseemly races to the federal and state courthouses, with each party seeking to commence its action first. The preservation of the delicate balance between the federal and state courts, a consideration of the utmost significance in our judicial system, Younger v. Harris, *supra*, 401 U.S. at 44 [91 S.Ct. 746, 27 L. Ed.2d 669] would be ill-served by such an approach, which would leave little, if any, room for a careful analysis of the particular, often unique, factors present in each case.

501 F.2d at 23–24.

This Court agrees with the majority in *Salem Inn* that the need for a clear-cut method for determining when a district court should decline to exercise its jurisdiction mandates acceptance of the first-to-file rule. More important, if this were not the rule, it is difficult to see just when a federal plaintiff would ever be granted access to a federal forum, in light of the requirements, on the one hand, that there be an actual controversy between the parties (generally at least a threatened criminal prosecution), and, on the other, that this controversy be one which has not yet itself been brought into state court by way of arrest or indictment. If the promise of a federal forum is to be more than merely illusory, the portals of that forum must be open to the federal plaintiff at some certain moment, and should remain open until such time as he is brought, or chooses to go, before the state forum on the same claim.

the initial outcome of the state litigation, does not appeal but instead brings a separate and redundant suit on the same grounds in federal court. This sort of attempted lateral review is clearly improper, for this Court does not sit to entertain appeals from state trial courts. *Cf.* Huffman v. Pursue, Ltd., — U.S. —, —, 95 S.Ct. 1200, 43 L. Ed.2d 482 (1975); Jennings v. Boenning & Co., 482 F.2d 1128 (3rd Cir. 1973); Covell v. Heyman, 111 U.S. 176, 182–183, 45 S.Ct. 355, 28 L.Ed. 390 (1884). Neither will it permit plaintiff simultaneously to commence and to maintain two separate suits in two separate forums.

█ Traditional notions of comity, equity and federalism require that this Court stay its hand. Having chosen to litigate its federal claims in state court, and having lost its cause at the trial level there, Hamar may not now be heard to claim the right to re-litigate the identical federal claims at this federal trial level. Not only is it true that the *Younger* requirements of bad faith or other exceptional circumstances, leading to the conclusion that no potential exists for adequate remedy in the pending state court action, are absent here as grounds for federal court interference in ongoing state judicial proceedings,[10] but it is also true that this matter is presently the subject of such state proceedings precisely *because* this plaintiff *elected* to commence them there.[11]

10. There is little question here that in seizing the seven films from plaintiff the defendants were merely attempting to enforce existing state statutes, recently reconstrued by the Supreme Court of New Jersey to remedy federal constitutional defects, State v. DeSantis, 65 N.J. 462, 323 A.2d 489 (1974), and as so construed held constitutional by this Court, Hamar Theatres, Inc. v. Cryan, 390 F.Supp. 510 (D.N.J.1974), against films at least colorably within the purview of that statute. Plaintiff has made no other showing. *See* note 2, *supra.* Similarly, although plaintiff has alleged that the several seizures of its films, which both sides agree occurred, constitute official harassment and bad faith, there is no basis upon which this Court could find that the seizures were made "without any hope of ultimate success, but only to discourage" plaintiff's activities. Dombrowski v. Pfister, 380 U.S. 479, 490, 85 S.Ct. 1116, 1123, 14 L.Ed.2d 22 (1965). This Court, therefore, can find no evidence of that kind of prosecutorial bad faith or other extraordinary circumstances adequate to justify federal intervention here. Plaintiff simply has made no showing that the seizures in question were sought and effected by the exercise of official power "without adequate cause," Allee v. Medrano, *supra*, 416 U.S. at 813–814, 94 S.Ct. 2191, and the Court therefore cannot find that the seizures of plaintiff's films constituted official harassment. Finally, plaintiff has made no showing of other extraordinary circumstances causing it great, immediate and irreparable harm that is without meaningful redress in the state courts. Under these facts, this Court must conclude that the traditional requirements of equitable relief, as applied to the federal-state context of *Younger* and its progeny, have not been met by plaintiff here.

11. This Court's position finds ample support in recent case law. In Palaio v. McAuliffe, 466 F.2d 1230, 1232–1233 (5th Cir. 1972), the court noted that "the application of the principles of *Younger* should not depend upon such labels as 'civil' or 'criminal,' but rather should be governed by analysis of the competing interests that each case presents." Regardless of the validity of the civil-criminal distinction, it is clear from *Younger* that "the normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions," 401 U.S. at 45, 91 S.Ct. at 751 absent a demonstration by the federal plaintiff "that he will suffer irreparable injury if the federal court stays its hand . . . and . . . that he does not have an adequate remedy at law in the state courts." Duke v. Texas, 477 F.2d 244, 248 (5th Cir. 1973), rehearing denied, 478 F.2d 1402, cert. denied, 415 U.S. 978, 94 S.Ct. 1565, 39 L. Ed.2d 874 (1974), citing *Younger, supra. Duke* involved a state court order enjoining certain outside speakers from coming onto a state university campus. The speakers sued under § 1983 in federal court, and the federal court enjoined the enforcement of the state order. The Fifth Circuit reversed on the grounds that the requirements of equity, comity and federalism enunciated in *Younger* had not been met. The court first noted that "it is a time-tested rubric of our federalism that:

'Where a state court and a court of the United States may each take jurisdiction,

As this Court has noted, had plaintiff Hamar initially come to federal court to seek a hearing on its assertion that state agents had violated its federally-protected rights, instead of first proceeding to the state courthouse with its complaint, there is no doubt that, inasmuch as no state criminal or civil suit would then have been pending *against Hamar*,[12] no doctrine of law would have justified a refusal by this Court to grant this plaintiff a federal forum. However, having itself begun suit in state court, plaintiff must see it through there, instead of abandoning that forum in favor of another at the first adverse ruling.

The observation of the Court of Appeals in Brown v. Chastain, 416 F.2d 1012, 1013–1014 (5th Cir. 1969), cert. denied, 397 U.S. 951, 90 S.Ct. 976, 25 L. Ed.2d 134 (1970) quoting Pilkinton v. Pilkinton, 389 F.2d 32, 33 (8th Cir. 1968), cert. denied, 392 U.S. 906, 88 S. Ct. 2057, 20 L.Ed.2d 1364 (1968) is equally applicable here:

> It is plainly evident that what appellant seeks in this original action is a review by the federal courts of the proceedings of the . . . State Court . . . . Federal Courts are without authority to function as an appellate arm of the state courts.

The court continued in *Chastain*:

> "State courts are competent to decide questions arising under the federal constitution, and the federal courts most assuredly do not provide a forum in which disgruntled parties can relitigate federal claims which have been presented to and decided by the state courts." Deane Hill Country Club, Inc. v. City of Knoxville, 379 F. 2d 321, 325 (6th Cir. 1967), [cert. denied 389 U.S. 975 [88 S.Ct. 476, 19 L. Ed.2d 467] (1967)].

*Cf.* Lynch v. Snepp, 472 F.2d 769 (4th Cir. 1973), cert. denied, 415 U.S. 983, 94 S.Ct. 1576, 39 L.Ed.2d 880 (1974).

Under *Chastain*, "a federal district court is without jurisdiction to hear federal constitutional claims already litigated in state courts when . . . there is already a final, appealable judgment by a state court at the time the federal suit is instituted." Paul v. Dade County, Florida, 419 F.2d 10, 13 (5th Cir. 1969).

### III. THE PRAYER FOR DECLARATORY RELIEF

The Court notes that plaintiff Hamar seeks both injunctive and declaratory re-

---

the tribunal which first gets it holds it to the exclusion of the other, until its duty is fully performed and the jurisdiction invoked is exhausted; and this rule applies alike in both civil and criminal cases.' Taylor v. Taintor, 16 Wall. (83 U.S.) 366, 370 [21 L.Ed. 287] (1873). 477 F.2d at 251.

In order for the federal district court properly to intervene, the plaintiffs must "overc[o]me the heavy burdens imposed upon them by *Younger*—demonstrated irreparable injury and an inadequate remedy at law in the state courts." *Id.* The court held that "the mere possibility that the state court order might tend to 'chill' First Amendment rights is not in itself sufficient to justify federal intervention," citing *Younger*, 401 U.S. at 52–53, 91 S.Ct. 746. The court also found that where a prior state court order was appealable under state law, the federal court here intruded itself into the processes of state litigation at a time when an adequate appellate remedy was available in the state courts. Such intrusion was improper as disruptive to the delicate balance between federal and state courts implicit in traditional concepts of comity and federalism. As representative of the dominant partner in the necessary interplay between two sovereigns, federal courts must be especially sensitive to this balance and assiduous in its preservation. *Id.*, at 252.

The court therefore concluded that since "the plaintiffs below made no effort to utilize orderly state court procedures before resort to the federal system" and since "mere errors or mistakes by the state trial court are not special circumstances which justify federal intervention," then "a party may not invoke the aid of a federal court, alleging that his state remedies are inadequate, without having first tested the sufficiency of those remedies and having found them to be wanting." *Id.*

12. *See* note 8, *supra*.

lief. In *Zwickler, supra,* 389 U.S. at 254, 88 S.Ct. at 399, the Supreme Court held that "a federal district court has the duty to decide the appropriateness and the merits of the declaratory request irrespective of its conclusion as to the propriety of the issuance of the injunction." Thus, although this Court has found no basis for injunctive relief because of plaintiff's failure to show that state court remedies, which it itself has invoked, would be inadequate to protect it against "irreparable injury that is both serious and immediate," Gibson v. Berryhill, 411 U.S. 564, 574, 93 S.Ct. 1689, 1695, 36 L.Ed.2d 488 (1973), it is still necessary to make an independent assessment of plaintiff's declaratory claim. The Supreme Court noted in *Steffel, supra,* 415 U.S. at 468–469, 94 S.Ct. 1209 that *Zwickler* was reaffirmed in Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), and Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973). In the latter case, the Court wrote:

> The Court has recognized that different considerations enter into a federal court's decision as to declaratory relief, on the one hand, and injunctive relief, on the other.

410 U.S. at 201, 93 S.Ct. at 752.

In *Steffel,* the court found that a declaratory judgment was designed to have a less intrusive effect on state criminal proceedings, and that to engraft upon it the equitable requirements of injunctions would defy Congress' purpose in enacting the Declaratory Judgment Act "to make declaratory relief available in cases where an injunction would be inappropriate." 415 U.S. at 471, 94 S.Ct. at 1222.

This Court has made an independent assessment of plaintiff's claim for declaratory relief, and finds itself governed by the following *caveat* issued by the Supreme Court in *Steffel:*

> The only occasions where this Court has disregarded these "different considerations" and found that a preclusion of injunctive relief inevitably led to a denial of declaratory relief have been cases in which principles of federalism militated altogether against federal intervention in a class of adjudications. See Great Lakes Co. v. Huffman, 319 U.S. 293 [63 S.Ct. 1070, 87 L.Ed. 1407] (1943) (federal policy against interfering with the enforcement of state tax laws); Samuels v. Mackell, 401 U.S. 66 (1971).

415 U.S. at 472, 94 S.Ct. at 1222.

 In the case at bar, principles of federalism must be seen to preclude any federal intervention on the identical issues raised by Hamar in state court until the state court system has had the opportunity to pass on them finally through the appellate process. It would, obviously, be just as chaotic in terms of pending state proceedings to declare here the merits of the controversy between parties who are in state court on the identical claims as it would be to enjoin the state suit altogether.

## IV. CONCLUSION

For the foregoing reasons it is apparent to this Court that plaintiff, having sought and obtained an initial adjudication in state court on the very issues it now seeks to present here, must pursue its rights and remedies in the forum of its original choice. The federal court may not and should not provide an alternative forum for disgruntled suitors whose cases are yet pending before the courts of the states. This Court therefore declines to exercise its jurisdiction in the instant matter. The application for preliminary and permanent injunctive relief is denied, and the action will be dismissed. [13]

---

13. Dismissal is the proper course, since only in *Pullman* abstention would it be proper for the court to retain jurisdiction pending resolution of the state lawsuit. Hamar Theatres, Inc. v. Cryan, 365 F.Supp. 1312, 1329, n. 38 (D.N.J.1973), vacated and remanded on other grounds, 419 U.S. 1085, 95 S.Ct. 670, 42 L.Ed.2d 675 (1974). *Cf.* Lake Carrier's Assn. v. MacMullan, 406 U.S. 498, 512–513, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972).