Michael **WISNOSKI** et al., Plaintiffs,

v.

Roger **WEIHING** et al., Defendants.

No. 75–C–175.

United States District Court,
E. D. Wisconsin.

June 4, 1975.

Samson, Friebert, Finerty & Burns, by Thomas W. St. John & Robert H. Friebert, Milwaukee, Wis., for plaintiffs.

Melli, Shiels, Walker & Pease, by Jack D. Walker, Madison, Wis., for defendants.

DECISION and ORDER

MYRON L. GORDON, District Judge.

This is one of several state and federal class actions which have grown out of a municipal labor dispute involving the public school teachers in the Hortonville Joint School District No. 1. See Hortonville Ed. Asso. v. Joint Sch. Dist. No. 1, 66 Wis.2d 469, 225 N.W.2d 658 (1975); Bradley et al. v. Clegg et al., Civil No. 74–C–375 (E.D.Wis.).

The labor dispute began in January 1974, over the 1973–1974 and the 1974–1975 teachers' contracts. Collective bargaining did not resolve the dispute and in March, 1974, a substantial number of teachers engaged in a strike. The school board discharged over 80 teachers. Thereafter, the teachers' representative and bargaining agent, the Hortonville Education Association, commenced an action in state court on behalf of the teachers who were discharged by the board to declare the action of the school board null and void and for reinstatement of the teachers.

In Hortonville Ed. Asso. v. Joint Sch. Dist. No. 1, 66 Wis.2d 469, 225 N.W.2d 658 (1975), the Wisconsin supreme court determined that:

1) "the school board did have the power to discharge the teachers who en-

gaged in the prohibited strike." 66 Wis. 2d at 481, 225 N.W.2d at 664–665; 2) teachers are not denied equal protection because, unlike police and firemen, they are not accorded binding arbitration or other dispute settlement rights. 66 Wis. 2d at 484, 225 N.W.2d 658; 3) teachers are not denied equal protection, as contrasted with nonpublic employees, by the application of the strike ban contained in § 111.70(4)(*l*), Wis.Stats. 66 Wis.2d at 485–487, 225 N.W.2d 658; and 4) because "the board was the collective bargaining agent for the school district and thus was engaged in the collective bargaining process . . . .," 66 Wis.2d at 493, 225 N.W.2d at 671,

> "The decision to discharge was possibly a convenient alternative which would eliminate [the board's] labor problems in one fell swoop. We conclude that the board was not an impartial decisionmaker in a constitutional sense and that the appellants were denied due process of law." 66 Wis.2d at 494, 225 N.W.2d at 671.

The Wisconsin supreme court noted that

> "procedural due process is not limited to the factual determination as to whether an individual did or did not engage in the particular conduct. It extends as well to the action taken by the state once that conduct is established. 66 Wis.2d at 493, 225 N.W. 2d at 671.

It is undisputed that the teachers engaged in a strike. Indeed, they have pleaded the existence of a strike in this complaint. The concern of the Wisconsin supreme court in *Hortonville*, therefore, was that "even in cases of undisputed or stipulated facts, that an impartial decisionmaker be charged with the responsibility of determining *what action shall be taken* on the basis of those facts." 66 Wis.2d 469, 225 N.W.2d 658. (emphasis added). In this regard, the Wisconsin supreme court observed at pp. 496–498, 225 N.W.2d at pp. 672–673, that:

> "When the teachers went on strike, the school board was undoubtedly faced with a situation that needed immediate attention. Clearly, it had a duty to keep the schools open and staff them with competent teachers. If the schools were closed so that the statutory minimum number of school days was not reached, monetary state school aid would have been denied or jeopardized leading to a severe budget crisis. True, it could have sought an injunction or gone to the WERC [Wisconsin Employment Relations Commission] for some relief, but neither the courts nor the WERC could hire or fire teachers. Sec. 118.22(2), Stats., provides in part: 'No teacher may be employed or dismissed except by a majority vote of the full membership of the board.'
>
> "Assuming the school board did recognize, under this factual background, that it was not an impartial decision maker or hearing officer as constitutionally contemplated, where was it to go to obtain an authorized impartial hearing officer or decision maker? The answer is that the law as it presently exists .does not provide for one. Legislation could establish a necessary forum and procedures directly or by delegation to a proper department of government, but it does not.
>
> "When an adequate remedy or forum does not exist to resolve disputes or provide due process, the courts, under the Wisconsin Constitution, can fashion an adequate remedy.
>
> "The plaintiffs-appellants contend that part of sec. 118.22(2), Stats., which gives the school the exclusive right to hire and fire, is unconstitutional in that it denies due process. If the statute can be construed or procedures provided to meet a valid constitutional objection, it should be done.
>
> "We believe the school board should make the initial determination as to the hiring or firing of one or many teachers. . . ."

"In those situations where an employed teacher is discharged or otherwise disciplined and due process is required, *and the school board is in an adversary position,* we hereby provide and direct that *the dissatisfied teacher or teachers can, upon petition, obtain a de novo determination of all issues in any court of record in the county where the school district or a part of it is located.* The issues shall be determined by the court without a jury, unless the judge determines to call a jury and receive an advisory verdict. The court shall resolve any factual disputes and provide for a reasonable disposition." (emphasis added)

On February 5, 1975, the Wisconsin supreme court remanded the *Hortonville* cause to the trial court "for further proceedings not inconsistent with this opinion." 66 Wis.2d at 501, 225 N.W.2d at 674. Thereafter, on or about February 12, 1975, the school board issued notices that the school board was considering dismissal of all the members of the plaintiff class by non-renewal of teaching contracts which they might have for 1975–76. See Complaint, ¶ 25. The issue regarding the validity of the dismissal by non-renewal was presented to the Wisconsin supreme court, which, in a decision dated February 24, 1975, declined to restrain the school board from dismissing the members of the plaintiff class by non-renewal.

However, the order of the Wisconsin supreme court did include a proviso that any such determination by the defendants not to extend teaching contracts to the members of the plaintiff class would in no way prejudice the rights of the members of the plaintiff class with respect to the hearings which are to be held in the circuit court pursuant to the mandate of the Wisconsin supreme court in the principal case then under review pursuant to the motions for rehearing. See Complaint, ¶ 26. On April 30, 1975, the Wisconsin supreme court stayed the enforcement of its decision in *Hortonville*

"for a period of ninety (90) days from the date of this order or until the further order of this court."

In the meantime, this action was commenced on April 1, 1975. According to the named plaintiffs and the class of "Hortonville Teachers" whom they purport to represent

"29. [t]he defendants, through these non-renewals, intended to do precisely the same thing that the Wisconsin Supreme Court has ruled they are not capable of doing, that is determine the facts of the alleged strike and impose a penalty;

"31. The effective import of the decisions of the Wisconsin Supreme Court is that the members of the plaintiff class will receive due process hearings only after they are twice dismissed and that they are not entitled to an impartial decisionmaker in the first instance; therefore, this Court is requested to act.

.    .    .    .    .    .

"33. Section 118.22, Wis.Stats., as interpreted by the Wisconsin Supreme Court is asserted by the defendants to give them authority to proceed in this manner against the plaintiff class, and, insofar as § 118.22, Wis.Stats. authorizes such procedures, under the circumstances and facts of this case as alleged, such statute is unconstitutional as applied."

In this action, declaratory and injunctive relief—including reinstatement, back pay and the vacating of the board's recent non-renewal decisions—are sought, together with damages. This matter is before me on the plaintiffs' motions for a preliminary injunction and the convening of a three-judge court, as well as the defendants' motions to dismiss. These motions have been fully briefed. I conclude that this action should be dismissed.

It is apparent that there exists a strong identity—of interest and of personality—between the parties named in

this action and those involved in the state *Hortonville* case. See 66 Wis.2d 473, 225 N.W.2d 658. Indeed, only the plaintiffs' collective name, or alias, has changed. While the plaintiffs wore the hat of their representative and bargaining agent, the Hortonville Education Association, for purposes of their action in the Wisconsin supreme court, they have chosen to commence this action as the "Hortonville Teachers." In each case, however, they are the teachers who were discharged by the defendant board and purport to represent all former Hortonville teachers similarly situated.

The plaintiffs submitted their federal constitutional claims to the state trial court without reservation and appealed to the Wisconsin supreme court. In Hortonville Ed. Asso. v. Joint Sch. Dist. No. 1, 66 Wis.2d 469, 225 N.W.2d 658 (1975), the latter tribunal determined that the plaintiffs had been denied due process, but it declined even to comment with respect to the plaintiffs' prayer for reinstatement and back pay pending the outcome of certain "interim" due process procedures which it established. Moreover, in denying a subsequent petition for rehearing and by ordering a stay of its mandate until July 30, 1975, the Wisconsin supreme court underscored its intention not to provide the plaintiffs with such relief.

The foregoing reading of the Wisconsin supreme court's position with respect to the issue of the plaintiffs' entitlement to reinstatement, back pay and the vacating of the board's recent non-renewal decision—pending the due process hearings to which it has been adjudicated they are entitled—is borne out by the fact that included in the Wisconsin supreme court's April 30, 1975 stay order, is the following:

> "this order is entered with the proviso that any determination by the respondent school board to not extend a teaching contract to the appellants herein for the school year of 1975–1976 is without prejudice to the rights of any party in case # 635, the determination of whose rights must abide the hearing to be held by the circuit court in accordance with the mandate of this Court in case # 635."

That stay order was issued subsequent to the commencement of the instant action. The inescapable conclusion which must be drawn is that the plaintiffs, who brought the state court proceedings, submitted their federal claims to the state courts without reservation and now seek review by this court of several of the rulings with which they take exception, namely: 1) the "saving" construction given to § 118.22(2), Wis.Stats., by the Wisconsin supreme court, insofar as it provides for a teacher-initiated, post-termination de novo circuit court hearing in those situations where the school board occupies an adversary role to the teacher; and 2) the failure of the Wisconsin supreme court to provide them with the particular relief sought, including reinstatement, back pay, and the vacating of the recent non-renewal decisions, pending the prescribed due process hearing.

In England v. State Board of Medical Examiners, 375 U.S. 411 at p. 419, 84 S.Ct. 461 at p. 467, 11 L.Ed.2d 440 (1964), the United States Supreme Court stated:

> "We now explicitly hold that if a party freely and without reservation submits his federal claims for decision by the state courts, litigates them there, and has them decided there, then—whether or not he seeks direct review of the state decision in this Court—he has elected to forgo his right to return to the District Court."

The following footnote appears in the Supreme Court's opinion in Huffman v. Pursue, 420 U.S. 592, 95 S.Ct. 1200, 1209, 43 L.Ed.2d 482 (1975):

> "We in no way intend to suggest that there is a right of access to a federal forum for the disposition of all federal issues, or that the normal rules of res judicata and judicial estoppel do not operate to bar relitigation in actions under 42 U.S.C. § 1983 of fed-

eral issues arising in state court proceedings. *Cf. Preiser v. Rodriguez,* 411 U.S. 475, 497, 93 S.Ct. 1827, 1840, 36 L.Ed.2d 439 (1973)."

In my judgment, at this point, the only federal forum to which the plaintiffs in the *Hortonville* action are entitled is that which might be provided upon direct review of the decision of the Wisconsin supreme court in the United States Supreme Court. See 28 U.S.C. § 1257(2). Under the circumstances of this case, the district court should not attempt to review state court determinations of federal constitutional issues. See Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and Tang v. Appellate Division of N. Y. Supreme Ct., 487 F.2d 138 (2nd Cir. 1973).

It is important to note that the issues raised in this complaint are ones which have been or could be posed to the Wisconsin supreme court.

The preliminary injunctive relief sought in this action (reinstatement, back pay and vacating of the board's nonrenewal decisions) was specifically refused by the Wisconsin supreme court. The plainitffs' "too little, too late" challenge to the Wisconsin supreme court's "saving" construction of § 118.22(2), Wis.Stats., as it applied to them under the circumstances of this case, would appear also to have been raised before that tribunal, at least upon petition for rehearing.

This federal district court need not decide whether if faced with the constitutional issues raised in the *Hortonville* case, it would have ruled differently. In my opinion, there exists such a close identity of parties and issues between the instant action and the state *Hortonville* action that no only would it be inappropriate for this court in effect to "review" the determination of the Wisconsin supreme court with respect to the federal constitutional issues, but also this district court actually lacks jurisdiction to do so. Under these circumstances, I decline to comment further with respect to the merits of the plaintiffs' motions for a preliminary injunction and the convening of a three-judge court. Huffman v. Pursue, 420 U.S. 502, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975).

Therefore, it is ordered that this action be and hereby is dismissed.