**Doris E. JOHNSON et al.**

v.

**Robert F. KELLY et al.**

**Civ. A. No. 75–3103.**

United States District Court,
E. D. Pennsylvania.

July 11, 1977.

Timothy F. Sullivan and Dana M. Breslin, Delaware County Legal Assistance Ass'n, Chester, Pa., William E. Mowatt, Media, Pa., for plaintiffs.

Alfred O. Breinig, Jenkintown, Pa., for defendants.

## OPINION

DITTER, District Judge.

### I.  Introduction

This suit challenges certain tax sales conducted in Delaware County, Pennsylvania, pursuant to the County Return Act, Act of May 29, 1931, P.L. 280, as amended, 72 P.S. § 5971a et seq.  The primary constitutional challenges to the Act are that it violates due process: (1) by failing to provide for a prior judicial determination of alleged delinquent property taxes before the tax sale is conducted and (2) by failing to require notice by personal service to the owner prior to sale.[1]  Although brought in one complaint the suit actually is three separate controversies involving three separate properties.[2]  The plaintiffs are two individ-

---

1.  The plaintiffs also claim that the Act violates due process by failing to require notice of the two-year right of redemption (72 P.S. § 5971i) and of the right to any surplus after satisfaction of the taxes due plus costs (72 P.S. § 5971m).  In addition, they allege that the tax sales in question were defective on state law grounds for failure to comply with the requirements of the Act in various respects.

2.  A fourth controversy involves property located at 1129 Green Street, Marcus Hook, Delaware County, Pennsylvania.  This property was purchased by plaintiff Edna Sylvester and

her first husband in 1945 and has been occupied by her ever since.  The property was sold at tax sale on October 5, 1964, for nonpayment of 1962 and 1963 taxes and was purchased by George and Rey Gold.  The Golds in turn failed to pay 1965 taxes and the property was sold to the Commissioners of Delaware County on October 23, 1967, there being no other bidders at the sale.  Thereafter, by deed dated August 26, 1972, the Golds transferred whatever interest they had in the property to Robert Alden, Inc., which has now threatened to evict Mrs. Sylvester by filing a quiet title action in Delaware County Court of Common Pleas.  Naming as

uals and a couple each of whom owned one of the properties in question; the defendants are the two companies who purchased the properties and the prothonotary of the Delaware County Court of Common Pleas. The relief sought on behalf of the named plaintiffs and a class they seek to represent [3] includes, *inter alia*, (1) a declaratory judgment that the County Return Act is unconstitutional and that the tax sales in question are void, (2) an injunction preventing the defendants from commencing or proceeding with actions to quiet title to properties purchased at tax sales conducted pursuant to the Act, and (3) an injunction preventing the prothonotary of the Delaware County Court of Common Pleas from accepting quiet title actions brought by purchasers of properties sold at tax sales conducted pursuant to the Act.[4]

Upon filing this suit plaintiffs sought a temporary restraining order to prevent the imminent eviction of plaintiff Johnson and to enjoin the continuance of quiet title actions against plaintiffs Massey and the Tunstalls. By order of October 31, 1975, I denied the restraining order substantially for the reasons expressed later in this opinion, but counsel for the defendants agreed to proceed no further with the eviction or quiet title actions pending my final disposition of this matter. I also ordered the preliminary injunction motion consolidated with a hearing on the merits, directed the parties to submit a stipulation of uncontested facts, and requested briefs on the abstention issues, the request for class certification, and the merits of the constitutional challenge. Thereafter the parties filed comprehensive stipulations covering most of the relevant facts and I heard testimony over several days on the points in dispute.

■ I now conclude that in deference to the principles explained in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny the court must abstain from reaching the merits of this controversy and dismiss the complaint.[5] Al-

defendants the Golds and Robert Alden, Inc. (but not the County Commissioners), Mrs. Sylvester contends that she had no actual notice of the sales and that this violated her constitutional rights in the same respects as alleged by the other plaintiffs. She seeks an injunction against Alden's attempting to quiet title and a declaration that Alden has no interest in the property.

The Golds have filed an unopposed motion to dismiss in which they admit to having no further interest in the property and Mrs. Sylvester has moved for judgment by default against Alden which has failed to enter an appearance or in any way defend this action. Although I grant both motions I note parenthetically that this will not determine Sylvester's title to the property as against the Commissioners since they are not parties to this proceeding.

3. Plaintiffs have also moved to have this case certified as a class action. In view of my dismissal of the case for the reasons set forth hereinafter, I do not reach the class action question.

4. Although this suit was instituted prior to the recent amendments to 28 U.S.C. § 2281 et seq., the parties have not requested and my review of the law persuades me that the convening of a three-judge court is not necessary here. Even under the terms of the former statute a three-judge court is not required where the officer sought to be enjoined is not a state official, but a local officer engaged in a local

activity. *Moody v. Flowers*, 387 U.S. 97, 87 S.Ct. 1544, 18 L.Ed.2d 643 (1967); *Wilentz v. Soverign Camp, WOW*, 306 U.S. 573, 59 S.Ct. 709, 83 L.Ed. 994 (1939). In this case the only governmental official named as a defendant is the prothonotary of Delaware County and he is a county not a state official. See Pa.Const., art. 9, § 4. Moreover a challenge to the collection of taxes by local officers for local use pursuant to state statutory authorization has been held not to require the convening of a three-judge court. *Ex Parte Public National Bank*, 278 U.S. 101, 49 S.Ct. 43, 73 L.Ed. 202 (1928); *United States v. Lewisburg Area School District*, 539 F.2d 301 (3d Cir. 1976); *Tramel v. Schrader*, 505 F.2d 1310 (5th Cir. 1975). But cf. *Cleveland v. United States*, 323 U.S. 329, 65 S.Ct. 280, 89 L.Ed. 274 (1945).

5. Because of my conclusion that *Younger* abstention is appropriate here, I need not consider whether this suit also would be barred under the Tax Injunction Act, 28 U.S.C. § 1341 or the "broad[er] federalism doctrine," *Garrett v. Bamford*, 538 F.2d 63, 66 (3d Cir.), cert. denied, 429 U.S. 977, 97 S.Ct. 485, 50 L.Ed.2d 585 (1976), developed in cases such as *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943), even if there were no pending state judicial proceedings. As was recently highlighted by Justice Stevens' dissenting opinion in *Trainor v. Hernandez*, 431 U.S. 434, 469, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977), *Younger* abstention may be

though the parties have provided a wealth of detailed information on the procedures by which taxes are assessed and collected in Delaware County, in view of my disposition of this case, the only relevant facts are those set out below. Also, since I do not reach the merits, I have made no attempt to resolve disputed issues of fact. Rather, I have relied on the parties' stipulations and, where matters are in dispute, simply noted the parties' opposing contentions.

## II.  Factual Setting

### A.  Doris E. Johnson v. Grace Building Co.

Doris Johnson is an adult who resides at 155 North Ninth Street, Darby Borough, Delaware County, Pennsylvania. On October 27, 1969, this property was sold at a Delaware County Treasurer's Tax Sale for nonpayment of 1967 taxes. Although the fair market value at that time was approximately $10,000., defendant, Grace Building Company, purchased the property for $198.31. The record owner was Central Penn National Bank which held the property as trustee for Irene A. Worlds, the aunt of Mrs. Johnson. Mrs. Worlds had conveyed the property to Central Penn as trustee on January 20, 1965, and from 1965 until her death, Mrs. Worlds had lived with Mrs. Johnson in Camden, New Jersey. Although Mrs. Worlds died in 1968 leaving a will which named Mrs. Johnson as her sole heir, this will was not admitted to probate until November 18, 1969, after the tax sale.

As required by 72 P.S. § 5971g, prior to the tax sale the treasurer's office of Delaware County provided notice by publication and by certified mail to Central Penn. The certified mail notice was received by Central Penn on August 11, 1969, as reflected by the return receipt. Central Penn in turn forwarded this notice to Mrs. Johnson by regular mail letter dated August 18, 1969,

but Mrs. Johnson has no recollection of receiving this letter and she did not see the published notice. Although not required by the statute, in accordance with its customary practice, in November, 1969, the treasurer's office notified Central Penn by regular mail of the sale of the property on October 27, 1969, and of the two-year right of redemption, i. e., that at any time for two years following the sale the property could be reclaimed by paying the delinquent taxes and certain costs. This notice was received by Central Penn as evidenced by a copy found in its files. Central Penn in turn forwarded this notice to Mrs. Johnson and her attorney by regular mail letters dated November 13 and 14, 1969, respectively, but again Mrs. Johnson has no recollection of receiving these letters.

After the completion of probate proceedings of Mrs. Worlds' will, Central Penn conveyed all its title in the property (which at this point amounted only to a right of redemption) to Mrs. Johnson by deed dated August 10, 1970. Thereafter, on August 7, 1971, Mrs. Johnson moved into the property and has continued to reside there.

Grace filed a complaint to quiet title and for possession of the premises in question against Mrs. Johnson on January 24, 1972, in the Court of Common Pleas of Delaware County. Although personal service of the complaint was made on Mrs. Johnson on February 1, 1972, she did not file an answer or in any way defend and on May 31, 1972, final judgment by default was entered against her. The instant suit was commenced by Mrs. Johnson and the other plaintiffs on October 31, 1975.[6] Plaintiffs' counsel did not learn that the default judgment had been entered until after the complaint *sub judice* was filed. He has since filed a petition to have the default judgment opened,[7] which is pending in the Delaware County Court of Common Pleas.

appropriate even where abstention pursuant to Section 1341 is not required.

**6.** After the default judgment in the quiet title action, Mrs. Johnson continued to occupy the premises under a lease purchase arrangement with Grace which is now the subject of a sepa-

rate dispute also before this court and discussed infra.

**7.** The basis for the petition to open is twofold: (1) that Mrs. Johnson should be excused from failing to respond to the quiet title action because "she was in a state of deep depression

### B. Joseph L. Tunstall, Jr. and Mary Tunstall v. Curtis Building Company, Inc.

Mr. and Mrs. Tunstall are adults who reside at 67 Upland Road, Havertown, Delaware County, Pennsylvania. On May 31, 1961, the Tunstall's mortgaged this property to Havertown Savings and Loan Association, which has since merged with Penn Federal Savings and Loan Association, Inc. The mortgage provided for the customary escrowing arrangement whereby monthly payments including principal, interest and taxes were forwarded to the mortgagee which in turn was responsible for paying the property taxes each year. Accordingly, tax bills received by the Tunstalls were forwarded to Penn Federal.

Except in 1964 when they apparently had some difficulty, the Tunstalls have made their mortgage payments, including taxes, to the mortgagee since 1961.[8] As far as appears herein, with the exception of 1966, tax bills received by the Tunstalls for each year from 1961 to at least 1971 were forwarded to the mortgagee which paid them. For some unexplained reason taxes for the year 1966 allegedly were not paid.[9]

Because of the nonpayment of 1966 taxes, the property in question was sold at treasurer's tax sale on October 28, 1968. Defendant Curtis Building Company purchased it for $424.44, subject to the balance of the Penn Federal mortgage, approximately $4,000. The property's fair market value as of the commencement of the instant lawsuit was approximately $30,000.

As required by Section 5971g, prior to the tax sale the treasurer's office provided notice by publication and by certified mail to the Tunstalls, the record owners. The certified mail notice was addressed to the Tunstalls at 67 Upland Road, Havertown, Pennsylvania, and the return receipt bears the signature "Mary E. Tunstall" and is dated August 6, 1968, but neither Mr. nor Mrs. Tunstall have any recollection of receiving it nor did they see the published notice. In accordance with its customary procedures on November 13, 1968, the treasurer's office notified the Tunstalls via regular mail that their property had been sold on October 28, 1968, and of their two-year right of redemption. Again, the Tunstalls have no recollection of receiving this notice.

Curtis filed a complaint to quiet title and for possession of the property on May 20, 1971, in the Court of Common Pleas of Delaware County. Although personal service in the quiet title action was made by leaving a copy of the complaint at the Tunstall's residence with their adult daughter, Elizabeth, on May 27, 1971, the Tunstalls did not defend against this action and a final judgment by default was entered on September 9, 1971. Subsequently the Tunstalls petitioned to have the judgment opened, which was granted on March 21, 1972. An answer was filed, the quiet title action proceeded to trial without a jury, and on September 12, 1972, the court entered a verdict in favor of the Tunstalls.[10]

due to the betrayal by a very close and long-time friend;" and (2) that she was unduly influenced not to respond to the quiet title action by agents of Grace who told her that she had lost the property and there was nothing she could do about it. Stipulation of Fact No. 1, Ex. J.

8. The records of the Delaware County Court of Common Pleas, No. 13181 of 1964, reveal that Havertown Savings and Loan confessed judgment against the Tunstalls. on November 23, 1964, for an alleged default in mortgage payments on August 1, 1964. A writ of execution on this judgment was issued on May 9, 1966, but was stayed on the order of the bank's attorney on July 7, 1966. Since no further records of this proceeding have been provided, I can only assume that the Tunstalls and the bank were able to resolve this matter amicably.

9. It should be noted that none of the tax bills for years subsequent to 1966 contained any notice that any prior years taxes remained unpaid, nor were any payments made in subsequent years credited to the 1966 delinquency.

10. The basis of the trial court's decision as reflected in its opinion of May 9, 1974, was that Curtis had failed to sustain its burden of showing that the statutory notice provisions of the tax sale law had been complied with. To establish its title Curtis had relied solely on the deed it received from the treasurer on October 28, 1968, and the presumption of regularity of the acts of public officials which the deed carried. The trial judge felt that this presumption had been overcome by the testimony of Mr. Tunstall that he did not *receive* the statuto-

On appeal to the Commonwealth Court, the judgment was reversed and the case remanded for further proceedings. *Curtis Building Company, Inc. v. Tunstall*, 21 Pa. Cmwlth. 81, 343 A.2d 389 (1975).[11] The trial judge then ordered a new trial at which the prior record would be incorporated and the parties allowed to present additional evidence. The second trial had not commenced when this complaint was filed and is presumably being held in abeyance pending my decision herein.

### C. Joseph Massey v. Grace Building Company, Inc.

On February 4, 1946, Joseph Massey and his late wife, Mozelle, purchased 710 W. Cooke Ave., Darby Township, Glenolden Post Office, Delaware County, Pennsylvania. The Masseys resided there until 1966 when they moved to a smaller home where Mr. Massey still resides at Route 1, Rome Avenue, Newfield, New Jersey. Mrs. Massey died on July 21, 1973. When the Masseys moved to New Jersey they rented the Cooke Avenue property to their daughter and son-in-law, Dorothy and Adolphus Collins, who have resided at the property ever since.

On October 27, 1969, the property was sold at treasurer's tax sale for non-payment of 1967 taxes. Grace purchased it for $268.06; the property's fair market value is approximately $6,000.–$8,000. Prior to the tax sale the treasurer's office provided notice by publication and by certified mail to the Masseys. The first certified mail notice was addressed to "Joseph or Mozelle Massey, 710 Cooke Ave., Glenolden, Pa." and the return receipt bears the signature "Dorothy Collins" and is dated August 8, 1969. The treasurer's office sent a second certified mail notice to the Masseys at the same address. The return receipt for the second notice bears the signature "Mozelle Massey" and is dated August 29, 1969. Mr. Massey disputes that the signature is in fact that of his late wife and contends that the couple never received either of the mail notices nor saw the published notice.[12] Although the treasurer's office records contained some reference to the Masseys' New Jersey address, no notice of the sale was sent there. In accordance with its customary though not required practice, in November, 1969, the treasurer's office notified the Masseys by regular mail addressed to 710 W. Cooke Ave. that their property had been sold on October 27, 1969, and of their two year right of redemption. Neither Mr. Massey nor Mrs. Collins recalls receiving this notice.

Curtis filed an action to quiet title and for possession against the Masseys on December 8, 1971. This matter had not come to trial when the instant suit was filed and apparently is now being held in abeyance pending my decision herein.

ry notice and that the burden then shifted back to Curtis to show actual compliance with the statutory notice requirements. Since Curtis had offered no further evidence, the judge entered judgment for the Tunstalls.

11. The Commonwealth Court ruled that the issue during the trial was whether or not the statutory notice had been properly *sent* and that Mr. Tunstall's testimony that he had not *received* the notice thus was insufficient to overcome the presumption of regularity which attached to the treasurer's deed.

12. Mr. Massey contends that he does not believe the signature on the second return receipt card is that of his late wife and Mrs. Collins believes that she may have signed her mother's name to the card, as she had done on other occasions. This theory is supported by the fact that the Masseys were not living at Cooke Avenue when the notice was sent and apparently came to visit the Collins' only on Sundays.

Additionally, Mrs. Collins states that mail received for the Masseys by the Collins' at Cooke Avenue was placed on a buffet in the dining room to be given to the Masseys when the latter came to visit on Sundays and that her small children could have picked up such mail and lost it. Mr. Massey also claims that he did not see the certified mail notices, but admits that his wife was the one who handled business matters for the couple. Obviously, no one could say for sure whether the late Mrs. Massey in fact received the notices.

### III. Discussion

██ There are two judicially [13] created abstention doctrines which are potentially applicable in this case.[14] The first, usually designated *Pullman* abstention after the case which was its genesis, *Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), has as its purpose the avoidance of needless constitutional adjudication. It comes into play where an ambiguous or unconstrued state statute challenged on federal constitutional grounds might be interpreted by a state court so as to avoid the necessity for decision of the constitutional issue. *Id.* at 500, 61 S.Ct. at 645. *Pullman*-type abstention has no application where the state law is clear, *Wisconsin v. Constantineau*, 400 U.S. 433, 438–39, 91 S.Ct. 507, 510–11, 27 L.Ed.2d 515 (1971); *Coll v. Hyland*, 411 F.Supp. 905, 908 (D.N.J.1976) (three-judge court), or where the statute or regulation would be unconstitutional no matter how it might be construed by the state courts. *Harman v. Forssenius*, 380 U.S. 528, 534–35, 85 S.Ct. 1177, 1182, 14 L.Ed.2d 50 (1965); *Cicero v. Olgiati*, 410 F.Supp. 1080, 1088 (S.D.N.Y. 1976). Moreover, the mere fact—almost always present—that federal constitutional issues might be litigated in state court is no ground for *Pullman*-type abstention. See *Wilwording v. Swenson*, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971); *McNeese v. Board of Education*, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963). "Prior resort to the state courts even where there may be an available state remedy, is not required." *Conover v. Montemuro*, 477 F.2d 1073, 1079 (3d Cir. 1973).

██ When these principles are applied here, it becomes clear that *Pullman*-type abstention is inappropriate: the County Return Act clearly contains no provisions for the two procedures—(1) a judicial determination of the legitimacy of the alleged tax deficiency prior to the tax sale and (2) personal service by the sheriff of the notice of tax sale—[15] the absence of which form the essential basis for the plaintiffs' constitutional attack. Thus there is no possibility of a state court construction which would avoid the need for adjudication of the constitutional issues. See *Constantineau*, supra, 400 U.S. at 439, 91 S.Ct. at 511.

The second abstention doctrine, which may be dubbed *Younger*-abstention after the case which is primarily responsible for its modern contours, is based on principles of equity, comity, and federalism. In *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Supreme Court held that absent highly unusual circumstances a federal court may not enjoin ongoing state criminal proceedings.[16] And with *Huffman v. Pursue*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977); and *Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977), the court has extended the reach of *Younger* to a variety of ongoing state civil proceedings, although it has not yet held the doctrine to be applicable to all civil litigation. *Trainor*, supra, 431 U.S. at 444, 97 S.Ct. 1911, n. 8; *Juidice*, supra, 430 U.S. at 336, n. 13, 97 S.Ct. at 1218.

██ Unlike the *Pullman* doctrine, the linchpin of *Younger* abstention is not unresolved state law questions, but the pendency of state proceedings, *Huffman*, supra,

---

**13.** Since this suit is brought, *inter alia*, under 42 U.S.C. § 1983, the anti-injunction *statute*, 28 U.S.C. § 2283, is inapplicable. *Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972).

**14.** A third judicially created abstention doctrine, *Burford*-type abstention, named for the case from which it arose, *Burford v. Sun Oil Company*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), is also arguably relevant to this case. However, its underlying rationale—the avoidance of needless conflict by the federal

courts with a state's administration of its own laws—is subsumed in the area of state taxes by 28 U.S.C. § 1341 and there is therefore no need to consider it. See note 5 supra.

**15.** See Brief for Plaintiffs, document No. 16, at 12.

**16.** This same rule of non-interference was made applicable to declaratory judgment actions in *Samuels v. Mackell*, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971).

420 U.S. at 606–607, 95 S.Ct. at 1209; *Trainor,* supra, 431 U.S. at 446, 97 S.Ct. 1911. *Younger* abstention is proper even though the underlying dispute will require adjudication of federal issues by some court. See *Gibson v. Berryhill,* 411 U.S. 564, 577, 93 S.Ct. 1689, 1697, 36 L.Ed.2d 488 (1973).[17] Indeed, the very rationale of the doctrine is to allow the state judiciary to perform its function of "providing a forum competent to vindicate any constitutional objections interposed against [the state's] policies" free from interference by the federal courts, which might "be interpreted as reflecting negatively upon the state court's ability" to carry out such responsibilities. *Huffman,*[18] supra, 420 U.S. at 604–605, 95 S.Ct. at 1208, quoting, *Steffel v. Thompson,* 415 U.S. 452, 462, 94 S.Ct. 1209, 1217, 39 L.Ed.2d 505 (1974).

Plaintiffs argue that *Younger* abstention is applicable only when the state proceedings are criminal or "quasi-criminal" and cite a number of cases in which federal courts did not abstain from deciding constitutional questions despite the fact that civil proceedings were pending in the state courts. The problem is that most of these cases were decided prior to *Huffman,* did not address the abstention questions at all, or considered only *Pullman* abstention. More specifically all three cases cited by plaintiffs which involved challenges to state tax sales, i. e. *Wager v. Lind,* 389 F.Supp. 213 (S.D.N.Y.1975); *Ponder v. Montieth,* Civil Action No. 73–1991 (E.D.Pa. filed Oct. 18, 1974) (three-judge court); *Scoggin v. Schrunk,* 344 F.Supp. 463 (D.Ore.1971), rev'd, 522 F.2d 436 (9th Cir. 1975), cert. denied, 423 U.S. 1066, 96 S.Ct. 807, 46 L.Ed.2d 657 (1976), were decided before *Huffman* and none addressed the abstention issue. In any event the Supreme

Court's recent decisions in *Juidice* and *Trainor* put to rest the notion that labels such as "criminal," "quasi criminal" or "civil" have any talismanic quality for *Younger* purposes. In these cases the Court noted that the quasi-criminal nature of the nuisance proceeding at issue in *Huffman* was only one of the two factors upon which that decision had been based. The other and more important factor was

"the notion of 'comity,' that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Huffman,* supra, 420 U.S. at 601, 95 S.Ct. at 1206, quoting *Younger,* supra, 401 U.S. at 44, 91 S.Ct. at 750.

*Juidice,* supra, 430 U.S. at 334, 97 S.Ct. at 1217 (1977).

*Juidice* applied the *Younger* doctrine to a state judicial contempt proceeding and *Trainor* held it applicable to a civil suit instituted by the state to recover fraudulently obtained welfare payments. But even before these most recent Supreme Court decisions lower federal courts had recognized the broad implications of the *Younger* doctrine and had relied upon it in abstaining in a wide variety of cases not involving quasi-criminal matters. See *Lamb Enterprises, Inc. v. Kiroff,* 549 F.2d 1052 (6th Cir.), cert. denied, —— U.S. ——, 97 S.Ct. 2926, 53 L.Ed.2d 1064 (1977) (state court civil proceedings alleged to violate full faith and credit); *Louisville Area Inter-Faith Committee v. Nottingham Liquors,* 542 F.2d 652 (6th Cir. 1976) (labor dispute);

---

**17.** The result may be different where the entire basis of the state court proceeding emanates from federal law, *DeGenna v. Grasso,* 413 F.Supp. 427, 429–30 (D.Conn.1976) (three-judge court), or where resolution of the controversy requires interpretation of a federal statute, see *Doe v. Maher,* 414 F.Supp. 1368, 1374–75 (D.Conn.1976) (three-judge court), vacated on other grounds, —— U.S. ——, 97 S.Ct. 2474, 53 L.Ed.2d 534 (1977).

**18.** The very fact that dismissal is the proper disposition of a case in which *Younger* abstention is found appropriate, *Ahrensfeld v. Stephens,* 528 F.2d 193, 200 (7th Cir. 1975); *Hamar Theatres, Inc. v. Cryan,* 393 F.Supp. 34, 47 n. 13 (D.N.J.1975); see *Hicks v. Miranda,* 422 U.S. 332, 352, 95 S.Ct. 2281, 2293, 45 L.Ed.2d 223 (1975), carries the assumption that the state courts will decide *all* the issues in the case.

*Williams v. Williams,* 532 F.2d 120 (8th Cir. 1976) (per curiam) (termination of parental rights); [19] *Ahrensfeld v. Stephens,* 528 F.2d 193 (7th Cir. 1975) (eminent domain); *McCune v. Frank,* 521 F.2d 1152 (2d Cir. 1975) (police grooming regulations); [20] *Lynch v. Snepp,* 472 F.2d 769 (4th Cir. 1973), cert. denied, 415 U.S. 983, 94 S.Ct. 1576, 39 L.Ed.2d 880 (1974) (access to public schools); *Cousins v. Wigoda,* 463 F.2d 603 (7th Cir.) (per curiam), application for stay denied, 409 U.S. 1201, 92 S.Ct. 2610, 34 L.Ed.2d 15 (1972) (Rehnquist, Circuit Justice) (political party delegates); *Gras v. Stevens,* 415 F.Supp. 1148 (S.D.N.Y.1976) (three judge court) (divorce); *Kahn v. Shainswit,* 414 F.Supp. 1064 (S.D.N.Y.1976) (divorce); *Burdick v. Miech,* 409 F.Supp. 982 (E.D.Wis.1975) (three judge court) (proceedings to identify father of child likely to become public charge); *Sorger v. Philadelphia Redevelopment Authority,* 401 F.Supp. 348 (E.D.Pa.1975) (eminent domain); *Fisher v. Federal National Mortgage Assoc.,* 360 F.Supp. 207 (D.Md.1973) (mortgage foreclosure).[21] I believe that the standard which governs *Younger's* application to civil proceedings was aptly put by Judge Gordon in *Burdick v. Miech,* supra:

> [T]he controlling concept in determining the kind of civil proceeding to which *Younger* should be applied is whether the state proceeding is one where "the State's interest . . . is likely to be every

bit as great as it would be were [it] a criminal proceeding."

409 F.Supp. at 984–85, quoting *Huffman,* supra, 420 U.S. at 604, 95 S.Ct. at 1208; see *Juidice,* supra, 430 U.S. at 335, 97 S.Ct. at 1217.

A great many of the cases relied upon by plaintiff in which *Younger* abstention either was not considered or was found inappropriate involved some type of proceeding arising out of a creditor-debtor relationship between private parties, *i. e.* garnishment, attachment, rent distraint, etc. While a state's interest in these areas is considerable (and indeed may be enough to require abstention when the state judiciary's contempt power is utilized in connection therewith, see *Juidice,* supra), standing alone it is not of the same magnitude as the state's interest in matters where abstention has been held proper, such as child welfare (*Williams* and *Burdick*), public schools (*Lynch*), standards of conduct for attorneys (*Anonymous, Greene, Niles, Mildner*) and law enforcement officers (*McCune*), eminent domain (*Ahrensfeld and Sorger*) and the state's own fiscal integrity (*Trainor*). The tax sale proceedings at issue in this case are surely as important to the state as any of the matters just listed. In fact the state's fiscal interest here would appear to be of a greater magnitude than that found sufficient to justify abstention in *Trainor,*

**19.** Compare *Alsager v. District Court of Polk City, Iowa,* 518 F.2d 1160 (8th Cir. 1975).

**20.** In *McCune* the pending proceedings were before an administrative rather than judicial body. Although the result seems correct in light of *Geiger v. Jenkins,* 401 U.S. 985, 91 S.Ct. 1236, 28 L.Ed.2d 525 (1971), aff'g mem., 316 F.Supp. 370 (N.D.Ga.1970), the applicability of *Younger* to administrative proceedings has not been firmly established. Compare *Clark v. Weeks,* 414 F.Supp. 703 (N.D.Ill.1976) (three judge court) with *McCune,* supra, and *Grandco Corp. v. Rochford,* 536 F.2d 197 (7th Cir. 1976) (dicta). See also *Ohio Bureau of Employment Services v. Hodory,* 431 U.S. 471, 478, 97 S.Ct. 1898, 52 L.Ed.2d 513 n. 8 (1977).

**21.** See also *Anonymous v. Association of the Bar,* 515 F.2d 427 (2d Cir.), cert. denied, 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1975); *Greene v. Virginia State Bar Assoc.,* 411 F.Supp. 512 (E.D.Va.1976); *Niles v. Lowe,* 407

F.Supp. 132 (D.Haw.1976) (three-judge court) and *Mildner v. Gulotta,* 405 F.Supp. 182 (E.D. N.Y.1975), aff'd, 425 U.S. 901, 96 S.Ct. 1489, 47 L.Ed.2d 751 (1976), all of which involved attorney disciplinary proceedings. Although the Supreme Court has characterized such proceedings as "quasi criminal," *In re Ruffalo,* 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968), the *Anonymous* and *Niles* courts specifically rejected the civil-criminal dichotomy in deciding to abstain.

The cases cited in the text for the most part involved situations where the plaintiff in the federal court action had been involuntarily brought before the state tribunal as a defendant. Of course, *Younger* also applies where the federal court plaintiff was himself the one who had earlier initiated state court proceedings. See *Wisnoski v. Weihing,* 396 F.Supp. 1358 (E.D.Wis.1975); cf. *Hamar Theatre's, Inc. v. Cryan,* supra.

supra. The challenged procedures form an integral part of an overall property tax collection system which undoubtedly is a major if not *the* major source of income for the state's political subdivisions.

Although abstention has been held proper even where the state civil proceeding involves a dispute between private parties, see *Juidice, Kiroff, Nottingham Liquors, Gras* and *Kahn,* supra, it is obviously true that one of the indicators of the importance to the state of the pending proceeding is whether or not the state is a party to it. *See Trainor,* supra, 431 U.S. at 448–450, 97 S.Ct. 1911. (Blackman, J., concurring). In this case, however, the fact that the state court plaintiffs are not governmental entities but private tax sale purchasers does not evince a lessened state interest in the state court proceedings, the reasoning being that these tax sale purchasers trace their titles through the governmental entity that conducted the sale; that is, in quieting title the purchasers must rely on the validity of *official* action in conducting the sale. And since the state's ability to collect taxes through the tax sale procedure is dependent upon the willingness of people to buy properties at tax sales which in turn

depends upon their ability to obtain valid title to all that the taxpayer owned, the state has a very substantial interest in the outcome of the state court quiet title action between the tax sale purchaser and the delinquent taxpayer.[22]

The plaintiffs also contend that a state court challenge to the constitutionality of the notice provisions of Section 5971g will prove unavailing. In support of their position they cite *Curtis Building Co. v. Tunstall,* supra, 21 Pa.Cmwlth. 81, 343 A.2d 389 (1975); *Tax Claim Bureau of Montgomery County Upset Sale,* 93 Mont.Co.L.Rptr. 170 (Montg.Co.C.P.1970), aff'd 2 Pa.Cmwlth. 408, 278 A.2d 172 (1971), and *Cantwell v. Henzler,* 9 D. & C.2d 21 (Bucks Co.C.P. 1956). There are two answers to the plaintiffs' argument. First, plaintiffs' prospects of success in the state courts are not as bleak as they seem to believe. While the cases just cited have held that the only *statutory* requirement is that notice be properly dispatched, neither these nor any other Pennsylvania cases have upheld the County Return Act in the face of the direct *constitutional* assault leveled by these plaintiffs.[23] It seems inconceivable that the

**22.** In addition to the County Return Act which was enacted in 1931, the Pennsylvania legislature in 1947 enacted the Real Estate Sales Tax Law, Act of July 7, 1947, P.L. 1368, as amended, 72 P.S. § 5860.101 et seq. and gave counties within its coverage the option of collecting taxes under either the 1931 Act or the 1947 Act. However in 1974 the legislature withdrew this option and required, *inter alia,* counties of the second class A, such as Delaware County, to collect their taxes in accordance with the procedures established by the 1947 Act. See Act of July 3, 1974, P.L. 451, § 1, amending 72 P.S. § 5860.102. This amendment became effective on January 1, 1976.

Plaintiffs argue that, inasmuch as no more tax sales will be conducted under the County Return Act in Delaware County, a declaration of the Act's unconstitutionality will not affect the county's interest in the collection of taxes. I disagree. In the first place, even though the county has already collected its taxes by conducting the challenged sales, a declaration of the Act's invalidity presumably would require someone to make restitution to those who purchased properties at the sales. Normally such reimbursement could be expected to come from the former owners of the properties in question, but it is conceivable that the county might

be subjected to liability for at least some of these claims. More importantly, while the sale procedures established by the 1947 Act are different from those contained in the 1931 Act, neither statute contains the notice and hearing procedures which plaintiffs claim are constitutionally mandated. See 72 P.S. § 5860.602. Thus a decision on the merits might well have a significant impact on the county's interest in collecting future taxes.

**23.** In *Hess v. Westerwick,* 366 Pa. 90, 97, 76 A.2d 745 (1950), the Pennsylvania Supreme Court held due process *at least* requires that the statutory mail notice must be properly sent; however, the court went on to say that the provision making the failure to receive notice insufficient grounds for avoiding the sale was "not objectionable" from the due process standpoint. I do not believe that such dicta in a twenty-six year old case properly can be taken as an indication that plaintiffs' constitutional attack on the statute is doomed to failure. The court's refusal in *Huhn v. Chester County,* 16 Pa.Cmwlth. 18, 328 A.2d 906, 907 (1974), to consider "certain constitutional questions" because they had not been raised in the trial court is similarly insignificant. Finally the court's holding in *Shoemaker v. Tax Claims*

Pennsylvania courts, which have displayed a high degree of sensitivity to the plight of those faced with loss of their property through tax sales,[24] would fail to give plaintiffs' due process claims a fair hearing.

■ Second, and more fundamentally, *Huffman* makes it clear that a litigant's prospects for successfully vindicating his constitutional claims in state court is not an appropriate matter for the federal courts to consider in ruling on *Younger* questions:

[T]he considerations of comity and federalism which underlie *Younger* permit no truncation of the exhaustion requirement merely because the losing party in the state court of general jurisdiction believes that his chances of success on appeal are not auspicious. Appellee obviously believes itself possessed of a viable federal claim, else it would not so assiduously seek to litigate in the District Court. Yet, Art. VI of the Constitution declares that "the judges in every State shall be bound" by the Federal Constitution, laws and treaties. Appellee is in truth urging us to base a rule on the assumption that state judges will not be faithful to their constitutional responsibilities. This we refuse to do.[25]

420 U.S. at 610–11, 95 S.Ct. at 1211.

■ Finally one or two additional comments on the *Younger* status of the *Johnson v. Grace* controversy are in order.

Throughout the preceding discussion I have treated that case for *Younger* purposes as though the quiet title suit were pending before the Delaware County Court of Common Pleas on the date the instant complaint was filed even though prior to the commencement of this action the quiet title suit had gone to judgment by default against Mrs. Johnson. In point of fact the only matter actively pending in the quiet title suit is the petition to open the default judgment which was filed approximately one month *after* the federal suit began. The basis for my treating the state court action between Grace and Johnson as pending is that at the time of filing the petition to open the default judgment in the quiet title action few, if any, "proceedings of substance" had taken place in the case before me. See *Hicks v. Miranda,* supra, 422 U.S. at 349, 95 S.Ct. at 2292. But even if I were to look only to the status of the state case on the date the federal suit was filed the result would not change. In *Huffman,* the court held that a party who had suffered an adverse judgment in a state trial court could not avoid the strictures of *Younger* simply because he either had not filed, 420 U.S. at 609–10, 95 S.Ct. at 1210–11 or could not file, *id.* at 611 n. 22, 95 S.Ct. at 1211, an appeal at the time he commenced his federal action. *A fortiori* Johnson may not avoid *Younger* by failing even to defend in the state trial court.[26]

Bureau of Montgomery County, 27 Pa.Cmwlth. 211, 365 A.2d 1320 (1976), that due process does not require actual notice of a tax sale does not resolve plaintiff's challenge here, since even they do not contend that actual notice is constitutionally required; their position is only that personal service of the notice must be made by the sheriff.

Moreover, even if these cases could be taken as an indication that the state courts would uphold the statute's constitutionality, "state courts, like other courts, sometimes change their minds." Hicks v. Miranda, supra, 422 U.S. 332, at 350 n. 18, 95 S.Ct. 2281, at 2292, 45 L.Ed.2d 223.

24.  See, e. g., March v. Banus, 395 Pa. 629, 151 A.2d 612 (1959); Shafer v. Hansen, 389 Pa. 500, 133 A.2d 538 (1956); Hess v. Westerwick, supra; Ross' Appeal, 366 Pa. 100, 76 A.2d 749 (1950); C. Everett, Inc. v. Ayres, 22 Pa. Cmwlth. 422, 349 A.2d 514 (1975); In re Sales

of Property by Indiana County Tax Claim Bureau, 22 Pa.Cmwlth. 147, 348 A.2d 440 (1975); Price-Jeffries Co., Inc. v. Tillman, 11 Pa. Cmwlth.Ct. 153, 312 A.2d 494 (1973). See also Luskey v. Steffron, Inc., 461 Pa. 305, 336 A.2d 298 (1975).

25.  Although in Huffman the court was speaking specifically of a litigant's chances of success on appeal after he had already lost at the trial level, its reasoning applies a fortiori to litigants such as Johnson, the Tunstalls, and Massey, who have not even suffered a final defeat in the state trial court.

26.  Because I conclude that either Huffman or Hicks or both bars me from reaching the merits, I do not consider Grace's argument that the default judgment in the quiet title action is res judicata. But see Auritt v. Wheatcroft, 370 F.Supp. 948 (E.D.Pa.1974). Compare Scoggin

For all of the foregoing reasons, then, I conclude that this court must abstain[27] from reaching the merits of the controversy and order that the complaint be dismissed.[28]

### IV. The Confessed Judgment against Mrs. Johnson

After obtaining default judgment in the quiet title action against Mrs. Johnson, Grace Building Company leased to her the North Ninth Street property for $123. per month and gave her the option to re-purchase the property for $9500. Mrs. Johnson fell into arrears in rent payments almost immediately and on December 23, 1974, Grace commenced eviction proceedings before a district justice. A hearing on the complaint was held on January 14, 1975, after which judgment was entered in favor of Mrs. Johnson and against Grace.[29] An appeal to the Delaware County Court of Common Pleas was taken by Grace on February 3, 1975. Concomitantly Grace confessed judgment against Mrs. Johnson in an amicable action in ejectment as authorized by the lease-purchase agreement. A writ of possession was issued by the prothonotary, defendant Ippoliti,[30] on the same day, but before Grace could secure possession, Mrs. Johnson filed a petition to strike off the confessed judgment.[31] Grace responded by moving to have the petition dismissed.[32] On April 15, 1975, after hearing argument from counsel, Judge Howard F. Reed of the Court of Common Pleas dismissed Johnson's petition to strike and authorized Grace to execute upon its confessed judgment.[33] Thereafter, Mrs. Johnson obtained her present counsel, who on July 17, 1975, again sought a rule to have the confessed judgment stricken.[34] Judge Reed refused the

v. *Schrunk*, supra, 522 F.2d 436 with *Lombard v. Board of Education*, 502 F.2d 631 (2d Cir. 1974), cert. denied, 420 U.S. 976, 95 S.Ct. 1400, 43 L.Ed.2d 656 (1975).

**27.** My conclusion is buttressed by 28 U.S.C. § 1341. Although I do not directly rely on this statute and even though the principles of federalism embodied in *Younger* and its progeny are applicable independently of congressional enactments which may foster the same policy, *Huffman*, supra, 420 U.S. at 594 n. 1, 95 S.Ct. at 1203; *Mitchum*, supra, 407 U.S. at 243, 92 S.Ct. at 2162; see *Trainor*, supra, 431 U.S. at 464–467, 97 S.Ct. 1911 (Stevens, J., dissenting), the very existence of the Tax Injunction Act is weighty evidence of how strong the policy of non-interference is in the area of state taxation.

**28.** The plaintiffs do not contend that any of the exceptions to *Younger* are present here. There is no indication that the state proceedings were brought in bad faith and whatever the merits of plaintiffs' challenge to the County Return Act, it is certainly not "flagrantly and patently violative of express constitutional guarantees in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." *Huffman*, supra, 420 U.S. at 611, 95 S.Ct. at 1212. Nor does this case fit into the *Younger* exception suggested in *Conover* for a case where the relief sought would not interfere with the ongoing state proceedings, 477 F.2d at 1080. Here the plaintiffs seek to have the tax sales voided and the purchasers' titles invalidated. This would clearly interfere with the ongoing quiet title actions, the very purpose of which is to determine the validity of the purchasers' titles.

Compare *Wooley v. Maynard*, 430 U.S. 705, 710–711, 97 S.Ct. 1428, 1433, 51 L.Ed.2d 752 (1977).

**29.** There is no indication in the record of the reason for the district justice's decision.

**30.** Robert F. Kelly, now a Judge of the Delaware County Court of Common Pleas, who was the prothonotary at the time has been replaced by E. Jack Ippoliti. An appropriate substitution of parties pursuant to Fed.R.Civ.Proc. 25(d)(1) has been made.

**31.** The petition alleged, *inter alia*, that the decision of the district justice was *prima facie* evidence that she was not in default of the lease-purchase agreement.

**32.** The alternative grounds urged by Grace as a basis for dismissal were (1) that Mrs. Johnson's counsel had failed to give proper notice to Grace that the petition would be filed and (2) that the petition failed as a matter of law because on appeal from the decision of a district justice the Common Pleas court hears the matter *de novo*.

**33.** Since the court did not issue an opinion it is impossible to ascertain the reasoning behind the court's order.

**34.** The renewed petition to strike off the confessed judgment urged the following grounds: (1) that in accepting the confession of judgment the prothonotary violated the consent decree entered by Judge Gorbey of this court in

rule because "the merits have been decided in the hearing of April 15, 1975, and the issues are res judicata." Mrs. Johnson took no appeal from either the April 15 or July 17 orders of Judge Reed. The eviction of Mrs. Johnson was eventually scheduled for October 30, 1975, but was stayed at the request of Grace's counsel when he learned that plaintiff planned to file the instant suit on the following day.

In Count VII of the complaint Johnson seeks to have the confessed judgment in eviction stricken on the ground that in accepting it defendant Ippoliti violated a consent decree entered by the Honorable James H. Gorbey of this court in *Hubbard v. Pennsylvania Department of Transportation*, Civil Action No. 73–818 (E.D.Pa.). *Hubbard* was a civil rights action in which the plaintiffs sought in essence to extend the holding of *Swarb v. Lennox*, 314 F.Supp. 1091 (E.D.Pa.1970), aff'd in part, 405 U.S. 191, 92 S.Ct. 767, 31 L.Ed.2d 138 (1972), prohibiting the entry of confessed judgments against individuals earning less than $10,000. per year to Delaware County.[35] Named as defendants in that case were the Pennsylvania Department of Transportation (Penndot),[36] and the sheriff and prothonotary of Delaware County. On December 5, 1973, Judge Gorbey approved the following consent decree between the plaintiffs and the prothonotary.

### CONSENT DECREE

And now, this 29th day of November, 1973, it is hereby stipulated and agreed by Joseph and Pearl Hubbard and all others similarly situated, plaintiffs, and Robert Kelly, Prothonotary of Delaware County, defendant, acting through their respective counsel who are duly authorized to sign this stipulation and Consent Decree, as follows:

*Hubbard v. Pennsylvania Department of Transportation*, Civil Action No. 73–818 (E.D.Pa.); and (2) that the confessed judgment violated the provisions of 41 P.S. § 407(a).

(1) From this day henceforth, Robert Kelly, the Prothonotary of Delaware County, Pennsylvania, his successors in office, agents and employees will not enter judgments in ejectment by confession pursuant to consumer leases providing therefor against individual residents of Delaware County, Pennsylvania, earning less than Ten Thousand Dollars ($10,000) per year.

(2) This agreement is binding only upon the parties plaintiff protected by this Consent Decree and does not purport to limit the rights of parties not protected by it.

> By [Counsel for plaintiffs]
> [Counsel for defendant prothonotary]

Approved by the Court

[James H. Gorbey] [December 5, 1973]

It is undisputed that Johnson earns less than $10,000 per year and in a stipulation entered in this case the prothonotary admits that the confessed judgment against her was entered in error and in violation of the consent decree. However, rather than simply striking off the confessed judgment on his own initiative, the prothonotary now takes the position that since the matter has been brought before me, he will act only at the direction of this court.

Grace offers two arguments in defense of the confessed judgment. First it contends that it is not bound by *Hubbard* since it was not a party to that case. Secondly, Grace itself invokes principles of res judicata by contending that Judge Reed's final and unappealed orders of April 15 and July 17, 1975, bar relitigation of the validity of the confessed judgment. I find it unnecessary to consider the status of the confessed judgment because I believe that matter is not ripe for adjudication.

35. The final order in *Swarb* restrains only officials of Philadelphia County.

36. Apparently the reason for suing Penndot was that it had condemned many properties in Delaware County for highway construction

Although standing alone the pending [37] eviction proceeding effectuated through the confessed judgment might not warrant *Younger* abstention,[38] here the controversy surrounding the confessed judgment is inextricably intertwined with the outcome of the pending quiet title action. If, in that proceeding, the state court determines that the County Return Act is unconstitutional or if it invalidates the tax sale on any other grounds, Mrs. Johnson will still be the owner of the property in question and Grace will have no basis to evict her. It would then be unnecessary for me to consider the validity of the confessed judgment in the eviction proceedings since there would be no such proceeding. Compare the factual situation presented in *Pearson v. Dodd*, 429 U.S. 396, 97 S.Ct. 581, 50 L.Ed.2d 574 (1977) (per curiam). Under these circumstances the challenge to the confessed judgment is clearly premature and will not be considered by this court. See *O'Shea v. Littleton*, 414 U.S. 488, 497–98, 94 S.Ct. 669, 676–77, 38 L.Ed.2d 674 (1974); *Communist Party v. Subversive Activities Control Board*, 367 U.S. 1, 70–81, 81 S.Ct. 1357, 1396–1402, 6 L.Ed.2d 625 (1961); cf. *Chacon v. Granata*, 515 F.2d 922, 924–25 (5th Cir.), cert. denied, 423 U.S. 930, 96 S.Ct. 279, 46 L.Ed.2d 258 (1975).

Appropriate orders in accordance with this opinion will be entered.

---

purposes and leased these properties to individuals pending the actual start of construction.

**37.** Since Judge Reed's orders of April 15 and July 17 have not been appealed through the state court system they are "pending" for *Younger* purposes. See the discussion supra at pages 166 and 167.

**38.** Standing alone the eviction proceeding might not involve sufficient state interest to warrant abstention since it is essentially a creditor-debtor matter between private parties. See the text at pages 17 & 18 supra. Moreover since plaintiffs challenge the confessed judgment as violating the *Hubbard* consent decree which was entered by this court *before* the confessed judgment, it might be argued that by entertaining the challenge to the confessed judgment this court was merely acting to protect the efficacy of its judgments.