Dorothy RIVERA, Individually and on Behalf of all Others Similarly Situated, Plaintiffs,

v.

Francis H. MALONEY, Commissioner of Children and Youth Services of the State of Connecticut and John F. Harder Acting Commissioner, Connecticut State Welfare Department, Defendants.

Civ. No. H–75–18.

United States District Court, D. Connecticut.

March 26, 1976.

Mary R. Hennessey, Dennis G. Hersh, Neighborhood Legal Services, Inc., Hartford, Conn., for plaintiffs.

Richard McCarthy, Fairfield County Legal Services, Bridgeport, Conn., for Shirley Alexander, applicant for intervention.

Francis J. MacGregor, Asst. Atty. Gen., Hartford, Conn., for defendants.

## MEMORANDUM OF DECISION

Before TIMBERS, Circuit Judge, and CLARIE and ZAMPANO, District Judges.

ZAMPANO, District Judge:

The plaintiff, Dorothy Rivera, commenced this civil rights action under 42 U.S.C. § 1983 and its jurisdictional counterpart, 28 U.S.C. § 1343(3), to challenge the constitutionality of the administrative procedures employed by the Connecticut State Welfare Department to remove two foster children from her custody and control. Since the complaint raised substantial constitutional questions with respect to regulations and practices of statewide application, a three-judge district court was convened pursuant to the provisions of 28 U.S.C.

§§ 2281 and 2284. *King v. Smith*, 392 U.S. 309, 312 n. 3, 88 S.Ct. 2128, 2130, 20 L.Ed.2d 1118, 1122 (1968); *Maggett v. Norton*, 519 F.2d 599 (2 Cir. 1975).

The material facts are not in dispute. On January 14, 1972, the Juvenile Court determined that two minor children, Esther and Edward Ross, were neglected and committed them to the custody of the Commissioner of the Connecticut Welfare Department as their statutory guardian. Conn.Gen.Stat. § 17–62. On the same date, the Commissioner placed the children with the plaintiff for foster care pursuant to a written contract entitled "Agreement for Board and Care of Children Under the Care of the State Welfare Commissioner." The agreement stated that the plaintiff would undertake certain responsibilities for each child in exchange for monthly support payments from the state, and further provided that the Commissioner reserved the right to remove the children from the foster home "at any time."

On November 14, 1974, the Welfare Department informed the plaintiff that the children would be removed from her home and that, if she wished to contest the decision, she was entitled to a "Case Review" hearing. The procedures applicable in a Case Review are set forth in regulations promulgated in an internal Welfare Department's directive labeled "Connecticut State Welfare Department Plan for Administrative Case Review", issued on October 1, 1973. The specified purpose of the hearing is to assure that foster children are not removed from an approved home "unless it is clearly in the best interest of those children." At the Case Review proceeding, the Welfare Department is represented by a social worker or program supervisor, while the children's interests are protected by a member of the Child and Family Services of Connecticut. Although a foster parent may appear and is permitted "to bring representation, witnesses, and consultants at his own expense," the rules expressly prohibit attendance by "attorneys, legal clerks, law students and legal assistants." The decision-making panel consists of two individuals from the Welfare Department who are experienced in foster children cases, and a trained social worker from a private agency. All decisions of the panel are final and are subject to review only by the Welfare Commissioner.

Plaintiff's request for a Case Review was granted and a hearing was scheduled for December 16, 1974. Prior to that date, plaintiff inquired whether she would be permitted to be represented by a lawyer, but was informed that counsel would be excluded from the proceeding. Consequently, she appeared at the hearing without her retained attorney. There she was sequestered during the testimony of the Welfare Department's witnesses; in addition, she was neither apprised of the evidence against her as an unfit foster mother nor was she given an opportunity to confront or cross-examine adverse witnesses. Immediately following the hearing, the panel decided to remove the Ross children from the plaintiff's home and they were turned over to the Welfare Department on December 18, 1974.

In her amended complaint, the plaintiff alleges that the Case Review hearing violated her rights to procedural due process in that the assistance of counsel and confrontation or cross-examination of adverse witnesses was denied. See, e. g., *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); cf. *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); *Hagopian v. Knowlton*, 470 F.2d 201 (2 Cir. 1972). The defendants, on the other hand, argue that in the foster parent-foster children relationship, the plaintiff has neither natural nor property rights which are encompassed within due process protections and that the dispute between the parties must be resolved by the principles of the law of contracts.

While the constitutional issues are troublesome, we find that state law is sufficiently ambiguous on the question whether Connecticut law requires a full *Goldberg* hearing so that we should invoke the doctrine of federal abstention

rather than pass on the merits of the constitutional claims. We therefore do not comment on the merits of plaintiff's contentions.

Although the plaintiff did not append any state law claim to her complaint, this Court, based on its own research following oral arguments, formed the opinion that Connecticut's Uniform Administrative Procedure Act (UAPA), Conn.Gen.Stat. §§ 4–166 *et seq.*, might be applicable to plaintiff's contentions. We therefore requested and received supplemental briefs from the parties addressed to this point. As expected, the defendants responded that the plaintiff's case was beyond the intent and framework of the UAPA; surprisingly, however, the plaintiff's brief agreed with the defendants' interpretation of the range of the UAPA. Nonetheless, we are satisfied that the plaintiff has a substantial statutory claim under Connecticut law which, for reasons to be stated, should be resolved in the state courts and not by this Court at this time.

In 1971, the Connecticut legislature enacted the UAPA which requires a *Goldberg*-type hearing in every "contested case" in which an individual's rights are affected by an adjudication of any state administrative agency. The definition of "contested case" first formulated by the legislature was a "proceeding . . . in which the legal rights, duties, or privileges of a party are required by statute to be determined by an agency after an opportunity for hearing." Conn.Gen.Stat. § 4–166 (1971). Under this definition, the plaintiff would not be entitled to the protective shields of the UAPA because no statute prescribes a hearing as a condition precedent to the termination of the foster parent-foster children relationship. However, in 1973, the legislature expanded the scope of a "contested case" to include "a proceeding . . . in which a hearing is in fact held." Public Act 73–620 (1973). Thus, facially at least, the amended UAPA would appear relevant since the plaintiff did in fact have an administrative hearing.

Referring us generally to the legislative history of the amendment, the parties claim that the 1973 addition to the statute was merely intended to "clarify" the definition of a "contested case" to include "those persons who by statute have a legal right to a hearing and actually had a hearing with those who have a legal right to have an opportunity for a hearing." This interpretation would indicate that, prior to the amendment, the UAPA was considered applicable only if an *opportunity* for a hearing was statutorily mandated, but that legislative clarification was thereafter required to insure that the UAPA was to be applied when a person *actually* had a hearing pursuant to the *opportunity* afforded by that statute. The argument borders on sophistry and we reject it. Contrary to the assertions of the parties, we find nothing in the legislative history to support their explanation for the amendment, nor have we uncovered a judicial ruling in any jurisdiction which could be the source of the need to have the legislature clarify the meaning of the model act in this respect.

In our opinion the import of the amendment is clear: once an administrative agency decides to conduct an investigatory and adjudicative hearing which affects the interests and rights of an individual, it must, unless specifically excused by law, do so in compliance with the dictates of the UAPA. This interpretation is the only one that is consistent with the proper grammatical construction of the amending language in the context of the full paragraph, i. e., "in which a hearing is in fact held" is an adjective clause modifying the noun "proceeding." We are fortified in our analysis by an administrative decision of the Commissioner of the Connecticut Motor Vehicle Department on July 11, 1973. Under Conn.Gen.Stat. § 14–111, the Commissioner may for cause and "with or without a hearing" suspend an operator's license or registration. Following the enactment of the amendment in question, the Commissioner issued a ruling that the change in the statute "re-

moves any doubt that department proceedings in which an operator's license or registration are (sic) suspended following a hearing are for the purposes of the Uniform Administrative Procedures Act 'contested cases'". (Department Message, entitled "Uniform Administrative Procedures Act Amendment," dated July 11, 1973). See also *McAuliffe v. Carlson*, 30 Conn.Sup. 118, 303 A.2d 746, Court of Common Pleas, State of Connecticut (1973), wherein the state court held that a "contested case" under the UAPA is one in which a hearing is required by statute, *"or held."* (Emphasis supplied).

However, the question still remains whether we should exercise jurisdiction to determine the constitutional issue or defer to the state judicial process in the interests of comity and federalism. We find there are valid reasons to invoke the doctrine of abstention.

■ First, it is obvious that to resolve the federal constitutional claim, we must definitively construe the scope of the UAPA, which is as yet unsettled. As noted, the state statute is susceptible to varying constructions, at least one of which would be consistent with the safeguards of due process. Under these circumstances, since a decision under state law might obviate the need for a federal court judgment, we should abstain. *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); cf. *England v. Louisiana Board of Medical Examiners*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964); *Reid v. Board of Education of the City of New York*, 453 F.2d 238 (2 Cir. 1971); *Hamar Theatres, Inc. v. Cryan*, 393 F.Supp. 34 (D.N.J.1975).

Second, a determination that the UAPA applies to a Case Review would have a considerable impact on the foster children's program and implicate us in a particularly difficult and delicate sphere of state regulation. The Welfare Commissioner is charged by law with extensive duties "[to] exercise careful supervision of each child under his guardianship or care and [to] maintain such contact

with the child and his foster parents as is necessary to promote the child's safety and his physical, educational, moral and emotional development." Conn.Gen.Stat. § 17–37. Cf. *Wilder v. Sugerman*, 385 F.Supp. 1013, 1025 (S.D.N.Y.1974). During the past year, over 3,000 placements were made in foster homes and we are informed that the Commissioner found it necessary in furtherance of his responsibilities to remove about 45 children a month from these homes. Since it is evident that this case may result in the "possible disruption of complex state processes", we should stay our hand. *Zwickler v. Koota*, 389 U.S. 241, 249 n. 11, 88 S.Ct. 391, 396, 19 L.Ed.2d 444, 450 (1967); cf. *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); *Reetz v. Bozanich*, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970); *Harman v. Forssenius*, 380 U.S. 528, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965); *Meridian v. Southern Bell T. & T. Co.*, 358 U.S. 639, 79 S.Ct. 455, 3 L.Ed.2d 562 (1959).

Finally, although we are not unmindful that abstention will result in further anguish to the plaintiff, occasioned by the delay in beginning again in the state forum, cf. *Allegheny County v. Mashuda*, 360 U.S. 185, 195–197, 79 S.Ct. 1060, 1066–1067, 3 L.Ed.2d 1163, 1170–1171 (1959), we are convinced that special circumstances exist which mandate referral in order to allow the state courts to construe their own statutes and administrative procedures in a manner consistent with the federal constitution. Thus, the constitutional rights of the plaintiff will be preserved while at the same time needless friction with the state courts will be avoided. *Harris County Commissioners Court v. Moore*, 420 U.S. 77, 95 S.Ct. 870, 43 L.Ed.2d 32 (1975); *Hostetter v. Idlewild Bon Voyage Liquor Corp.*, 377 U.S. 324, 84 S.Ct. 1293, 12 L.Ed.2d 350 (1964).

■ Accordingly, we abstain but retain jurisdiction to enable the parties to institute proceedings in the courts of the

State of Connecticut. Failure to seek relief in a state forum within 60 days will be a ground for dismissal by this Court.[1] *Government Employees v. Windsor*, 353 U.S. 364, 366, 77 S.Ct. 838, 839, 1 L.Ed.2d 894, 896 (1957); *Blount v. Mandel*, 400 F.Supp. 1190, 1202 (D.Md. 1975).

1. On October 22, 1975, Shirley Alexander was granted permission to intervene in this action. Since the intervenor's complaint raises identical legal issues as in the case at bar, this ruling is also dispositive of the intervenor's claims.