Dorothy RIVERA, et al., Plaintiffs,

v.

Marc MARCUS, et al., Defendants.

Civ. A. No. H–75–18.

United States District Court, D. Connecticut.

Feb. 3, 1982.

Stephen Wizner, New Haven, Conn., Margaret Hayman, Susan Shay, Conn. Civil Liberties Union Foundation, Hartford, Conn., for plaintiffs.

Francis J. MacGregor, Robert A. Nagy, Asst. Attys. Gen., Hartford, Conn., for defendants.

RULINGS ON PENDING MOTIONS

ZAMPANO, District Judge.

The plaintiff, Dorothy Rivera, commenced this civil rights action under 42

U.S.C. § 1983 and its jurisdictional counterpart, 28 U.S.C. § 1343(3), to challenge the constitutionality of the administrative procedures ("Administrative Case Review") employed by the Welfare Commissioner [1] to remove two foster children from her custody and control. Because the complaint raised substantial constitutional questions with respect to regulations and practices of state-wide application, a three-judge district court was convened pursuant to the provisions of 28 U.S.C. §§ 2281 (repealed 1976) and 2284.

Following a hearing on the merits, the three-judge court issued a decision in which it retained jurisdiction but abstained on the constitutional issues presented, directing the plaintiff within 60 days to institute proceedings in the state courts to determine the applicability of the Connecticut Administrative Procedures Act ("UAPA"), Conn. Gen.Stat. §§ 4–166 *et seq.*, to the Administrative Case Review. *Rivera v. Maloney*, 410 F.Supp. 106 (D.Conn.1976). Subsequently, after the plaintiff instituted an action in the state forum, the Connecticut courts issued rulings which the parties agree effectively foreclose a claim that the provisions of the UAPA are applicable. E.g., *Menard v. Maloney*, No. 120472 (Court of Common Pleas, Fairfield County at Bridgeport, May 4, 1978).

Upon return to the federal forum, the plaintiff amended her complaint to seek only declaratory relief, thereby obviating any further need for a three-judge court. Thereafter this Court appointed independent counsel, Professor Stephen Wizner of the Yale Law School, to represent the interests of the foster children.

Presently before the Court are defendants' motion to dismiss, and plaintiff's motions for class certification and for production of documents.

## I

The two foster children in this case, Esther Jean Ross and Edwin Ross were born in 1968 and 1970 respectively. Almost from birth these children resided with and were cared for by the plaintiff, Dorothy Rivera, following the expressed wishes of the natural mother. After the children's mother was committed to an institution for the mentally retarded in 1972, legal custody of Esther Jean and Edwin was transferred to the Connecticut Welfare Department by order of the Juvenile Court of the State of Connecticut. The state agency, in turn, entered into a foster care agreement with the plaintiff, whereby the plaintiff agreed to provide care and services to the children for which she would be compensated by the State. Among other things, the contracts expressly reserved the right of the agency to remove the children from the foster home "at any time."

On November 14, 1974, the state agency informed the plaintiff that the children would be removed from her home and that, if she wished to contest the decision, she was entitled to a "Case Review" hearing. The procedures applicable at the time in a Case Review were set forth in regulations promulgated in an internal Welfare Department's directive labeled "Connecticut State Welfare Department Plan for Administrative Case Review," issued on October 1, 1973. The specified purpose of the hearing was to assure that foster children were not removed from an approved home "unless it is clearly in the best interest of those children." At the Case Review proceeding, the Welfare Department was represented by a social worker or program supervisor, while the children's interests were protected by a member of the Child and Family Services of Connecticut. Although a foster parent was permitted to appear at the hearing and "to bring representation, witnesses, and consultants at his own expense," the rule expressly prohibited attendance by "attorneys, legal clerks, law students and legal assistants." The decision-making panel consisted of two individuals from the Welfare Department who were experienced in

---

**1.** On April 1, 1975, the Commissioner of Children and Youth Services succeeded the Welfare Commissioner as guardian of children previously committed to the Welfare Commissioner by the Juvenile Court.

foster children cases, and a trained social worker from a private agency. All decisions of the panel were final and subject to review only by the Welfare Commissioner.

Plaintiff's request for a Case Review was granted, and a hearing was scheduled for December 16, 1974. Prior to that date, plaintiff inquired whether she would be permitted to be represented by a lawyer, but was informed that counsel would be excluded from the proceeding. Consequently, she appeared at the hearing without her retained attorney. There she was sequestered during the testimony of the Welfare Department's witnesses; in addition, she was neither apprised of the evidence against her as an unfit foster mother nor was she given an opportunity to confront or cross-examine adverse witnesses. Immediately following the hearing, the panel decided to remove the Ross children from the plaintiff's home and they were turned over to the Welfare Department on December 18, 1974. Since then, and continuing to this date, the children have been in another foster home.

In the instant action, the plaintiff contends that the Case Review violated her rights to procedural due process in that it: 1) precluded her from the assistance of counsel during the hearing; 2) denied her the opportunity to confront and cross-examine witnesses; 3) did not permit extra-departmental or judicial review; and 4) did not provide for a reasoned, written opinion by an impartial decision-making board. The defendants, on the other hand, claim that the plaintiff has neither a "property" nor "liberty" interest that entitles her to the procedural protections of the due process clause and that even assuming the existence of such an interest, the Case Review system was constitutionally adequate.

## II

In effect, the plaintiff seeks a broad ruling, on behalf of herself and all past, present, and future foster parents in Connecticut, that a foster parent has the same due process rights that safeguard a natural parent from state interference. She argues that a long-term foster parent acts as the functional and psychological equivalent of a natural parent and fulfills the same socializing and emotionally supportive role performed by the traditional family structure. She disputes that only the nuclear family is within the constitutionally protected zone, and urges this Court to find that a foster child should be removed from a foster home only when removal from a natural home would be justified.

The plaintiff's arguments have considerable force and, in this Court's view, there would appear to be instances in which a liberty interest should be recognized where long-term family relationships evolve out of foster home placements. It seems clear that, as with a biological parent and child, strong, loving, emotional and psychological ties can develop among members of a long-term foster family. Any arbitrary state interference with those ties surely can result in harsh and lasting consequences to the foster child and to the foster family members. In these special circumstances, it would seem that a preremoval hearing which comports with constitutional standards may be required.

However, the issue is not free from doubt. In *Smith v. Organization of Foster Families for Equality & Reform*, 431 U.S. 816, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977) ("OFFER"), an association of foster parents challenged the constitutionality of New York's procedures governing removal of foster children from foster homes. At the time, New York law provided for notice to the foster parent, a conference on request, assistance of counsel, a statement of reasons for the decision, a full and fair administrative hearing on appeal, and judicial review of a decision involving a child who had been in foster care for 18 months or longer. In the course of its opinion, the Court carefully considered the question whether foster parents possessed a liberty interest which would accord them the same procedural safeguards that limit state interference with the rights of natural families.

The Court emphasized that, on the one hand, important factors distinguish the fos-

ter family from the natural family. The foster family has its origin in state law and contractual arrangements, rather than in biological ties. Moreover, the liberty interests in the natural parents may potentially conflict with those of the foster parents. On the other hand, the Court recognized that a deeply loving relationship between an adult and child may exist even in the absence of a blood tie, particularly "where a child has been placed in foster care as an infant, has never known his natural parents, and has remained continuously for several years in the care of the same foster parents . . . ." 431 U.S. at 844, 97 S.Ct. at 2109.

By finding that New York's statutory and regulatory scheme adequately protected whatever familial interest foster parents in New York may have, the Court avoided a definitive ruling on the complex issue of whether a foster relationship was sufficiently similar to the constitutionally protected biological family to warrant the same due process safeguards.

Since *OFFER*, several courts have considered the existence of a family liberty interest in the foster parent situation and have found that interest does not exist. In *Drummond v. Fulton County Department of Family & Children's Services*, 563 F.2d 1200 (5 Cir. 1977) (*en banc*), cert. denied, 437 U.S. 910, 98 S.Ct. 3103, 57 L.Ed.2d 1141 (1978), the court found that white foster parents who wanted to adopt their interracial foster child did not have a liberty interest "of full-fledged constitutional magnitude" deserving of due process protection. Under the circumstances, the court held that the state procedures were adequate to protect whatever less substantial interests the Drummonds had in the foster relationship. *Id.* at 1209.

In *Kyees v. County Department of Public Welfare*, 600 F.2d 693 (7 Cir. 1979), the Seventh Circuit held that the state did not deprive foster parents of a liberty interest by removing their foster children without any procedure. The court reasoned that the arrangement was known to the foster parents to be a "temporary" one and that

the foster parents had had "their day in court" to establish their right to adopt and had lost. *Id.* at 697.

In *Sherrard v. Owens*, 484 F.Supp. 728 (W.D.Mich.1980), aff'd 644 F.2d 542 (6 Cir.), cert. denied, —— U.S. ——, 102 S.Ct. 120, 70 L.Ed.2d 103 (1981), the court decided that foster parents did not have a family liberty interest and therefore were not entitled to the requirements of due process. The court based its decision on the absence of a reasonable expectation of a liberty interest by provisionally licensed foster parents who had only temporary care of foster children. However, the court did recognize that a protected family interest could arise depending on the weight to be given the following factors: the child's relationship to his biological parents; the age and previous living experiences of the child; the terms of the foster parents contract with the state agency; the length of stay with the foster family; and the foster parents' expectations. *Id.* at 740.

### III

■ Applying the principles enunciated in the leading cases to the facts of the case at bar as set forth by the plaintiff, e.g., *Miree v. DeKalb County, Ga.*, 433 U.S. 25, 27 n.2, 97 S.Ct. 2490, 2492 n.2, 53 L.Ed.2d 557 (1977); *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1977), this Court is of the opinion that plaintiff had a liberty interest in her foster parent relationship with the Ross children which entitled her to a preremoval hearing satisfying due process. However, under the unique circumstances of this case, this liberty interest rests on more limited grounds than those upon which plaintiff seeks relief.

First, plaintiff Rivera is the half sister of the Ross children and therefore, unlike the foster parents in *OFFER, Drummond, Kyees* and *Sherrard*, she has a direct biological family tie to the foster children. In the Court's opinion, the blood tie possessed by the plaintiff brings her within the status of a "parent" under federal constitutional law. Cf. *Moore v. City of East Cleveland*, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531

(1977) (grandmother); *Prince v. Massachusetts*, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944) (aunt and legal custodian). As a "parent," she had a liberty interest similar to that between natural parent and child that precluded arbitrary state interference in the family relationship existing between the plaintiff and the Ross children.

Second, the plaintiff's relationship with her foster children had its origin, not from the "power of the State" or from "state law and contractual arrangements," *OFFER*, supra, 431 U.S. at 845, 97 S.Ct. at 2110, but from the plaintiff's kindness and compassion in opening her home to her afflicted stepmother and her half-siblings. At the natural mother's express request, the plaintiff agreed to take care of and nurture the children. The children lived with the plaintiff for over two years before they ever entered foster care, and thereafter lived with the plaintiff for an additional two years before the State removed them from her custody. Under these circumstances, it would appear that the plaintiff held the same place in the emotional lives of the children, and fulfilled the same socializing functions, as a natural family. *Id.* at 844, 97 S.Ct. at 2109. See also *James v. McLinden*, 341 F.Supp. 1233, 1235 (D.Conn.1969).

Finally, the potential for conflict between the liberty interest of the natural mother and that of the plaintiff is minimal. Mrs. Ross initially did not give up her children to the state on the understanding that at some future date they would be returned to her. Compare *OFFER*, supra, 431 U.S. at 846, 97 S.Ct. at 2110. Rather, long prior to state involvement she voluntarily placed Esther Jean and Edwin with the plaintiff for safekeeping. Moreover, it seems highly unlikely that, in view of the natural mother's advanced stages of mental retardation, she will ever ask for the children's return.

## IV

Having decided that procedural due process must be accorded the plaintiff because of her liberty interest, the next question that must be addressed is what process was due in the particular context of this case.

*OFFER*, supra, 431 U.S. at 847, 97 S.Ct. at 2111. Because "due process is flexible and calls for such procedural protections as the particular situation demands," *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972), the specific procedural requirements in any given case must be determined by balancing and weighing the relative interests of the individual and the state. *Matthews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

Among the factors to be considered in assessing the adequacy of the procedures in question are: 1) the private interest that will be affected by the official action; 2) the fairness and reliability of the existing predetermination procedures and the probable value, if any, of additional procedural safeguards; and 3) the administrative burden and other societal costs that the additional or substitute procedural requirements would entail. *Id. OFFER*, supra, 431 U.S. at 848–49, 97 S.Ct. at 2111–12. It should also be noted that a "parent" is entitled to substantive due process protections which prohibit governmental interference with familial privacy in all but the most compelling and justifiable circumstances. *Moore v. City of East Cleveland*, supra, 431 U.S. at 500–04, 97 S.Ct. at 1935–38; *Wisconsin v. Yoder*, 406 U.S. 205, 231–33, 92 S.Ct. 1526, 1541, 32 L.Ed.2d 15 (1972); *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1972); *Griswold v. Connecticut*, 381 U.S. 479, 485, 85 S.Ct. 1678, 1682, 14 L.Ed.2d 510 (1965).

It is evident that the preremoval hearing afforded the plaintiff under the Connecticut Case Review in 1974 falls far short of the procedural safeguards found constitutionally adequate in *OFFER*. Because the *OFFER* court did not rule that the components in the New York scheme established the constitutional minimum, 431 U.S. at 855–56 and n.61, 97 S.Ct. at 2115 and n.61, less extensive procedural protections may be sufficient in some circumstances to pass constitutional muster. See *Drummond*, supra, 563 F.2d at 1210–11. However, the rather unusual and distinct liberty interest that precludes arbitrary state interference with the right of family

privacy possessed by the plaintiff here dictates that the following minimum safeguards should have been provided:

(1) Timely and adequate notice of the reasons for termination;

(2) An opportunity to retain counsel;

(3) Upon request, and in the absence of exceptional circumstances, a preremoval hearing;

(4) An opportunity to confront and cross-examine witnesses;

(5) An opportunity to present evidence and arguments;

(6) An impartial decisionmaker; and

(7) A written statement of the decision and a summary of the evidence in support thereof.

See *Sockwell v. Maloney*, 431 F.Supp. 1006 (D.Conn.1976), aff'd *per curiam* 554 F.2d 1236 (2 Cir. 1977).[2]

## V

The plaintiff has moved for certification pursuant to Fed.R.Civ.P. 23 of a class of persons composed of

"all past, present, and future licensed foster parents in Connecticut who pursuant to an agreement with Department of Children and Youth Services care for foster children in their homes and whose foster children were removed after January 1, 1978, or are subject to removal from their homes in the future. The class excludes those foster parents whose foster children remain in their home for fewer than 90 days and whose foster children are removed for immediate return to natural parents."

■ In view of the narrow basis on which this Court has determined that plaintiff has an interest in familial privacy, plaintiff fails to meet the typicality requirement of Rule 23 necessary for her to represent the proposed class. Thus, plaintiff's motion for class certification is denied as to the proposed class.

Similarly, plaintiff's motion for production of documents, in its present broad form, is denied.

2. On June 30, 1978, the Connecticut Department of Children and Youth Services issued

## VI

One additional matter remains. Attorney Wizner, independent counsel for the Ross children, points out the children have now been long removed from the plaintiff's home and "the stability of the children's current situation and their bonds to their present foster parents should be carefully considered before uprooting them again." The Court agrees and therefore accedes to his request to be heard before any specific relief is ordered.

Accordingly, it is ordered that:

1) The defendants' motion to dismiss is denied.

2) The plaintiff's motion for class certification in its present form is denied.

3) The plaintiff's motion for production of documents in its present form is denied.

4) Counsel for all parties shall appear for a conference before this Court on February 16, 1982 at 2:00 P.M. to discuss future proceedings.

administrative regulations to implement the *Sockwell* decision.